ROGERS, Appellant, vs. HOLLISTER and another, Respondents.

*February 27—March 17, 1914.*

*Divorce: Effect of judgment when entered: Wills: Construction: "Husband."*

1. *It would seem* that a judgment of divorce granted pursuant to sec. 2374, Stats., is effectual when entered to dissolve the marriage contract, subject to the conditions prescribed in the statute.

2. Where, while an action by a husband for a divorce was pending, the wife made her will giving her personal property to him "providing he is my husband at the time of my decease," and within a year after judgment of divorce was granted pursuant to sec. 2374, Stats., the wife died, it is *held* that he was not, within the meaning of the will, her husband at the time of her decease.

APPEAL from a judgment of the circuit court for Walworth county: E. B. BELDEN, Circuit Judge. *Affirmed.*

On September 19, 1911, *Fred L. Rogers,* husband of

Martha A. Rogers, commenced an action for divorce against his wife, said Martha A. Rogers. While the action was pending and on October 27, 1911, said Martha A. Rogers made her will which contains the following:

"If *Fred Rogers* is my husband at my decease, I give, devise and bequeath to him all of my personal property absolutely, and the right to use and occupy my residence where I now reside for and during his natural life, providing he is my husband at the time of my decease. . . .

"I nominate *Fred Rogers,* my husband, executor of this my will without bonds, provided he is my husband at my decease."

Judgment was entered in the action above mentioned January 9, 1912, which provided:

"It is ordered, adjudged, and decreed, as and for an interlocutory judgment herein, that the marriage and bonds of matrimony between the plaintiff, *Fred L. Rogers,* and the defendant, Martha Alice Rogers, be and the same are hereby dissolved, and each of the parties hereto is forever freed therefrom.

"It is further ordered, adjudged, and decreed that the plaintiff deliver to the defendant all their household goods and fixtures now in their home in the city of Delavan, Walworth county, Wisconsin, and also that the plaintiff pay to the defendant seven hundred dollars ($700) in cash, and that he give to the defendant two notes of five hundred dollars ($500) each, one due in one year from the date thereof, and the other due in eighteen months from the date thereof, with interest on each of said notes at the rate of six per cent. per annum.

"And it is further ordered, adjudged, and decreed that when the said articles of furniture and fixtures have been delivered and the payment of money made and the said notes given, as described in the findings in this action, by the plaintiff to the defendant, the same shall be a final division of the property of the plaintiff between the parties hereto.

"And it is further ordered, adjudged, and decreed that upon the application of either party to this action, made after the expiration of one year after the entry of this interlocutory judgment, or after the last modification or revision

thereof, if any be made, a final decree of divorce may be entered in said action as by law in such case made and provided."

Martha A. Rogers died December 26, 1912. The only question here involved is whether *Fred L. Rogers* was at the time of the death of Martha A. Rogers her husband within the meaning of her will.

The question arose on application for the appointment of an administrator of the estate of Martha A. Rogers, deceased, in the county court of Walworth county. The county court held that *Fred L. Rogers* was the husband of Martha A. Rogers, deceased, and ordered that letters of administration be granted to him. On appeal the circuit court reversed the judgment of the county court and directed that letters of administration issue to *James R. Williams,* father of deceased. This appeal is from the judgment of the circuit court.

*Geo. G. Sutherland* and *Charles E. Pierce,* for the appellant.

*E. L. von Suessmilch,* attorney, and *John B. Simmons,* of counsel, for the respondents.

KERWIN, J.   In the consideration of the question involved in this case it will be well to refer briefly to the statutes bearing upon the subject.

Sec. 2330, Stats., prohibiting marriage under certain circumstances, was amended by ch. 271, Laws of 1901, by adding thereto a provision to the effect that it shall not be lawful for any person divorced to marry again within one year from the date of the entry of such judgment, and that the marriage of any divorced person within one year from the date of the entry of such judgment shall be null and void, but upon application of such divorced person the court granting the divorce may authorize the marriage of such person within the year.   This statute was again amended by ch. 456, Laws of 1905, so as to provide, in effect, that it shall not be

lawful for any divorced person to marry again within one year from the date of entry of such judgment, and that the marriage of any divorced person solemnized within one year from the date of such judgment of divorce shall be null and void; and providing further that the circuit judge who granted the divorce, upon application of both parties, may by order authorize the remarriage of such divorced persons to each other within the year. Ch. 323, Laws of 1909, made several provisions and amendments to the law on the subject of divorce, and among others sec. 2360*k*, which provided in effect that in every action for divorce in which it should be determined that a divorce be granted, an interlocutory judgment shall be entered which shall fully determine the rights of the parties, provide for the care, custody, and maintenance of the minor children, fix the amount of alimony, etc., and that such judgment shall determine the status of the parties, but such determination of the status shall not be effective, except for the purpose of an appeal to review the same, until after one year from the date when such interlocutory decree was entered; that any of the provisions of such interlocutory judgment may be reviewed by appeal within one year from the date of such interlocutory judgment or from the date of the last modification or revision of the same, if modified or revised after it is first entered. Also, sec. 2360*l*, which provided that at the expiration of one year from the entry or from the date of last modification of such interlocutory judgment the final judgment may be entered, unless such interlocutory judgment shall have been reversed or so modified on appeal as to prevent entry of such final judgment, unless the court, for sufficient cause, upon its own motion or upon the application of a party, shall otherwise order before the expiration of such period, and that if an appeal from such interlocutory judgment be pending at the expiration of said year, no final judgment shall be entered until such appeal shall have been finally determined.

Other changes were made by the legislature in 1911 (ch. 239), which left the law on the subject as follows:

"Sec. 2374. 1. When a judgment of divorce from the bonds of matrimony is granted in this state by a court, such judgment, so far as it determines the status of the parties, shall not be effective, except for the purpose of an appeal to. review the same, until the expiration of one year from the date of the entry of such judgment.

"2. So far as said judgment determines the status of the parties the court shall have power to vacate or modify the same, for sufficient cause shown, upon its own motion, or upon the application of either party to the action, at any time within one year from the entry of such judgment. But no such judgment shall be vacated or modified without the service of notice of motion, or order to show cause on the divorce counsel, and on the parties to the action, if they be found. If the judgment shall be vacated it shall restore the parties to the marital relation that existed before the entry of such judgment.

"3. It shall be the duty of every judge, who shall enter a judgment of divorce, to inform the parties appearing in court that the judgment, so far as it affects the status of the parties, will not become effective until one year from the date when such judgment is entered.

"4. Such judgment, or any provision of the same, may be reviewed by an appeal taken within one year from the date when such judgment was entered. At the expiration of such year, such judgment shall become final and conclusive without further proceedings, unless an appeal be pending, or the court, for sufficient cause shown, upon its own motion, or upon the application of a party to the action, shall otherwise order before the expiration of said period. If an appeal be pending at the expiration of said year, such judgment shall not become final and conclusive until said appeal shall have been finally determined."

It will be seen that by the amendments made in 1911 the provision in ch. 323, Laws of 1909, respecting the entry of an interlocutory judgment was dropped out and other changes made.

Sec. 2374, Stats., does not make plain just what the status of the parties is during the year after judgment. True, it provides that the judgment, so far as it determines the status of the parties, shall not be effective, except for the purpose of an appeal to review the same, until the expiration of one year from date of entry, and that so far as it determines the status the court shall have power to vacate or modify it at any time within one year, and if the judgment shall be vacated it shall restore the parties to the marital relation that existed before the entry of the judgment. The statute makes it the duty of the judge who shall enter the judgment to inform the parties that the judgment, so far as it affects the status of the parties, will not become effective until one year from date of entry. It further provides that the judgment may be reviewed by appeal within one year, and at the expiration of one year shall become final without further proceedings unless an appeal be pending or the court shall otherwise order before expiration of said period.

Now it is contended by appellant that the judgment here entered was not effectual to dissolve the bonds of matrimony until the expiration of one year from date of entry; therefore, at the time of the death of Martha Alice Rogers the appellant, *Fred L. Rogers,* was her husband. On the part of the respondents it is insisted that the judgment dissolved the marriage contract at the date of entry, subject to revision within one year, and conditions specified in the statute; and that in any event the appellant was not the husband of Martha Alice Rogers at the time of her death within the meaning of her will.

We need only consider the latter proposition in this case, namely, whether *Fred L. Rogers* was the husband of Martha at the time of her death within the meaning of her will. While the divorce action had been commenced shortly before the will was executed, it is plain from the record that Martha was opposed to the divorce and desired a reconciliation; but

the appellant persisted and the judgment was entered contrary to the wish of the wife. Whether the judgment dissolved the marriage contract when entered, subject to modification within the year, or whether it became effectual to dissolve the contract at the end of the year, it was at least a conditional judgment, which without further action upon it would automatically become final and conclusive at the end of one year from its entry. So it would seem that when Martha Alice Rogers made her will bequeathing property to *Fred L. Rogers* if he should be her husband at the time of her death, she meant that she gave the property to him if no divorce was granted. It does not seem that she intended to give her property to him if he had a judgment of divorce entered against her which would at least be final and conclusive one year from the date of entry unless otherwise ordered. She doubtless meant a "duly commissioned husband," with all the rights and privileges and charged with all the duties and obligations of a real husband in law and in fact. Whatever the effect of the judgment may have been under the statute when entered, it at least impaired the relation which formerly existed between *Fred L. Rogers* and Martha Alice Rogers as husband and wife and severed the social if not the legal relation which formerly existed between them. We therefore conclude that *Fred L. Rogers* was not, at the time of the death of Martha Alice Rogers, her husband within the meaning of the will.

The history of legislation on the subject and the statute as left by ch. 239, Laws of 1911 (sec. 2374, Stats.), would seem to indicate that it was the intention of the legislature that the entry of judgment should dissolve the marriage contract, subject to the conditions prescribed by the statute, but this we do not decide. It follows that the judgment of the court below must be affirmed.

*By the Court.*—The judgment of the court below is affirmed.

The following opinion was filed March 23, 1914:

MARSHALL, J. (*concurring*).   In harmony with what I
have several times said, I think the court should now decide
the question of whether under sec. 2374, Stats., the parties
to a divorce action are man and wife during the waiting
period after judgment, except as regards remarrying.   That
is a very important matter.   The public interests require all
uncertainty in respect to it to be set at rest at the earliest
possible moment.   Serious consequences to many innocent
persons and to the social state, in general, are within reason-
able probabilities so long as the ambiguity left in the statutes
remains unsolved.   There is opportunity to solve it now.
The matter has been well presented by counsel.   We are as
able to decide upon it now as we ever will be.   Judicial duty,
from my viewpoint, requires action without hesitation.   The
one who speaks for the court inclines to that view, as will be
clearly seen by the opinion closing the case.

What does the statute mean by the language: "Such judg-
ment, so far as it determines the status of the parties, shall
not be effective, except for the purpose of an appeal . . .
until the expiration of one year from the date of the en-
try . . ."   Looking at that, by itself, one would, unhesitat-
ingly, say, that the legislative idea was a judgment in form
only for a waiting period of one year; the parties to be never-
theless man and wife, in fact, the same as if no judgment had
been entered.

The history of the legislation on the subject, as indicated
by the opinion of the court, shows that the real purpose of
the legislature has been to prevent remarriage until the ex-
piration of one year after promulgation of the result of the
divorce trial.   The term "status" was used, which has a well
known technical meaning in regard to the social relations.
It stands, where used in respect to the condition of marriage,
for a thing, not physical, but incorporeal; the existence of a

condition embodying all the elements of the social relation in the marriage state; the condition of the parties in respect to their legal relations, one to another, to the family, and to organized society.

Words of a statute, having a well known technical meaning in the law, are presumed to have been used in that sense; but such presumption is by no means conclusive. If the statute, as a whole, shows, clearly, that some other reasonable meaning was intended, then it must be so treated; since, under all circumstances, the legislative will, if discoverable, should prevail.

So, as indicated, if we are to look no further than the language I have quoted, there would be no escaping the conclusion that, though a divorce judgment, in form, in the most positive terms, as in this case, dissolves a marriage contract, such contract yet subsists as before for the period of one year. No event short of a vacation of the judgment eould be said to, logically, restore the marriage state, because of the condition not having been created admitting of any such operations as that of restoration.

Now turning to the second subdivision of the statute we read: "If the judgment shall be vacated *it shall restore the parties to the marital relation that existed before the entry of such judgment.*" How is that? How can the "marital relation that existed before the entry of such judgment" be restored if never displaced? Restoration implies, necessarily, prior existence and an interim of nonexistence.

Are not the two parts of the statute, in their literal sense, fatally contradictory? It seems so. That the legislature did not intend any such absurd result, we must assume. If we can see- any reasonable way out of the dilemma,—the situation created by the crude work of those responsible for the manner of vitalizing the idea of the lawmakers, it is a judicial duty to adopt it.

Here we have a good example of the difficulties cast upon

the court by inefficient efforts to clearly state a legislative purpose. Difficulties of that kind, seemingly, have greatly increased in recent years, over and above such as were incident to legislation when lawmakers depended upon themselves for the framing and shaping of laws.

I see no way of minimizing or changing, in any way, the ordinary meaning of the words of sub. 2 of the section under consideration. Therefore the way out of the difficulty must be sought by minimizing the ordinary meaning of the language in the first part of the section, so that it will convey the idea of a termination of the state which the second subdivision declares a vacation of the judgment "shall restore." There is no very great difficulty in so minimizing the term "so far as it determines the status of the parties shall not be effective." It may be restrained to mere capacity to remarry,—the status of marriageability,—so restrained within the reasonable meaning of the word "status" or by reading words, as in place, which are there by necessary implication. Either is a perfectly legitimate method of judicial construction. *Neacy v. Milwaukee Co.* 144 Wis. 210, 217, 128 N. W. 1063.

Status with reference to the marriage relations, in general, means the entirety, the marriage state with all which the name implies; but, after all, it is the mere method of stating a condition. So it may be appropriately used with reference to the marriage state, or with explanatory context, a minor condition of it. A condition as to marriageability, is a status in a proper sense. Unless the word be so restrained, in this instance, there is an irreconcilable conflict in the statute which would require its condemnation as void for uncertainty. It seems that the legislature must have used the term "status" in the limited sense mentioned, and have had that in mind in declaring that a vacation of the judgment shall operate to restore the marital relations that existed before the entry of the judgment.

Reading the two provisions together, by necessary inference, the modifying phrase, as regards capacity to remarry, or some similar words, in effect, are in place after the word "status." So, in my judgment, upon the entry of a divorce judgment, as in this case, the parties cease to be man and wife; their former status is not affected, for the time being, as to marriageability; but otherwise their condition is entirely changed. Cohabitation between them during the period of waiting would be adultery and marriage of either person to a third person would be bigamy.

Upon the ground stated I concur in the judgment in this case.