## STEELE v. STEELE.
### Civil Action No. 30977.

District Court of the United States for the District of Columbia.

April 10, 1946.

Raymond Neudecker, of Washington, D. C., for defendant, for the motion.

James J. Laughlin, of Washington, D. C., for plaintiff, opposed.

HOLTZOFF, Justice.

This is an action by a woman against her former husband for assault committed after a decree of absolute divorce between them had been entered, but before the decree became effective. The defendant moves for summary judgment on the ground that the action may not be maintained. Counsel for the defendant urges that it is still the law in the District of Columbia that a married woman may not sue for assault committed on her by her husband during coverture and that this rule requires a dismissal of this action.

Originally, at common law, a man had a legal right to beat his wife provided he did not do so to excess. As was felicitously observed, however, by a master of the law, with a touch of poetry and imagery so characteristic of him, "The inn that shelters for the night is not the journey's end. The law, like the traveler, must be ready for the morrow. It must have a principle of growth." Cardozo, "The Growth of the Law," p. 20. The traveler has gone far since the days when this crude, barbaric code prevailed. By the latter part of the 17th Century, the right had become largely extinguished. Thus, there is a record of a case decided in 1686 in which a husband was placed under bond for good behavior "for ill usage of the wife." The King v. Lee, 2 Lev. 128. 1 Hawkins' Pleas of the Crown, ch. 60, p. 127, approved this procedure.

Blackstone summarizes the original rule and its later metamorphosis in the following manner (Book I, ch. 15, pp. 444, 445):

"The husband also, by the old law, might give his wife moderate correction. For as he is to answer for her misbehaviour, the law thought it reasonable to intrust him with this power of restraining her, by domestic chastisement, in the same moderation that a man is allowed to correct his apprentices or children; for whom the master or parent is also liable in some cases to answer. But this power of correction was confined within reasonable bounds, and the husband was prohibited from using any violence to his wife, aliter quam ad virum, ex causa regiminis et castigationis uxoris suae, licite et rationabiliter pertinet (otherwise than lawfully and reasonably belongs to the husband for the due government and correction of his wife). The civil law gave the husband the same, or a larger, authority over his wife: allowing him, for some misdemeanors, flagellis et fustibus acriter verberare uxorem (to beat his wife severely with scourges and sticks); for others, only modican castigationem adhibere (to use moderate chastisement). But with us, in the politer reign of Charles the Second, this power of correction began to be doubted; and a wife may now have security of the peace against her husband; or, in return, a husband against his wife. Yet the lower rank of people, who were always fond of the old common law, still claim and exert their ancient privilege: and the courts of law will still permit a husband to restrain a wife of her liberty, in case of any gross misbehaviour."

Blackstone was perhaps a little too optimistic, and even precipitous because vestiges of the original common law doctrine lingered until past the middle of the 19th Century. For example, in 1868 in State v. Rhodes, 61 N.C. 453, 98 Am.Dec. 78, the court held that a husband was not subject to criminal prosecution for beating his wife, if he did not do so to excess. Six years later in State v. Oliver, 70 N.C. 60, the court stated that the old doctrine that a husband had a right to whip his wife provided that he used a switch no larger than his thumb, was no longer law. This statement was qualified, however, by the limita-

tion that for motives of public policy, in order to preserve the sanctity of the domestic circle, the court would not listen to trivial complaints. How this course would preserve the sanctity of the domestic circle is not stated.

It has long been established that a man is subject to criminal prosecution for an assault on his wife. 1 Bishop, Criminal Law, sec. 891. An examination of the records of the inferior courts will demonstrate that this doctrine is constantly invoked. While the criminal liability of a husband for assaulting his wife was recognized, nevertheless, her incapacity to maintain an action for damages against her husband still continued. It was customary to assign two different reasons for this anomalous distinction. First, it was said that since at common law the husband and wife were regarded as one person, neither could maintain an action against the other for a tort inflicted by the latter upon the person of the former. Spector v. Weisman, 59 App. D.C. 280, 40 F.2d 792. As is frequently the case in our legal system, the common law shrank from pursuing this line of reasoning with remorseless logic to its bitter end. Else, the theory that husband and wife are one person would have led to the corollary that no criminal liability attaches to the husband for assaulting his wife, because in so doing, he was attacking only himself. Obviously such an absurd postulate would have met with but scant consideration and would not have been tolerated. The second explanation at times advanced for the wife's legal incapacity to sue her husband in tort is one of policy. It is said that to permit such suits would interfere with domestic felicity and conjugal harmony. This argument savors more of a rationalization of a preconceived notion than of bona fide reasoning leading to logical conclusion. A wife is at liberty to apply to the police and prosecuting authorities as well as to the criminal courts for redress. Surely, this recourse is as apt to be disturbing to family tranquility as a resort to a civil action for damages.

During the 19th Century, by legislation enacted in many jurisdictions, the wife became in large part free from her prior legal disabilities. The Married Women's Act was enacted in the District of Columbia in 1869, D.C.Code 1940, § 30—208. It contains the following provision:

"*Power of wife to trade, and to sue and be sued.*—Married women shall have power to engage in any business, and to contract, whether engaged in business or not, and to sue separately upon their contracts, and also to sue separately for the recovery, security, or protection of their property, *and for torts committed against them, as fully and freely as if they were unmarried; * * *"* (Emphasis supplied.)

It will be observed that the foregoing statute expressly provides that married women may sue separately for torts committed against them, as fully and freely as if they were unmarried. This statement is simple and clear. It is unambiguous and unequivocal. It contains no exception. Standing alone it would seem ineluctably to lead to the conclusion that the wife may sue any one for assault, and that, since no exception is stated, the defendant in such an action may be the husband.

I am precluded from adopting this view, however, by the fact that in 1910 the Supreme Court of the United States by a vote of four to three in Thompson v. Thompson, 218 U.S. 611, 31 S.Ct. 111, 54 L.Ed. 1180, 30 L.R.A.,N.S., 1153, 21 Ann.Cas. 921, held that this statute should be construed in the light of the common law; and that, therefore, it was not intended to permit a wife to sue her husband in tort, but merely to abrogate the pre-existing rule that a wife and husband had to join as plaintiffs in an action for tort committed against her by a third party. The Court in effect applied the centuries-old canon of statutory construction that statutes derogatory of the common law should be strictly interpreted. A vigorous dissenting opinion was written by Mr. Justice Harlean, with whom Mr. Justice Holmes and Mr. Justice Hughes concurred. It seems illuminating to quote some remarks from the dissenting opinion (pages 621–623 of 218 U.S., page 114 of 31 S.Ct., 54 L.Ed. 1180, 30 L.R.A.,N.S., 1153, 21 Ann.Cas. 921):

"Now there is not here, as I think, any room whatever for mere construction, so explicit are the words of Congress. Let us follow the clauses of the statute in their order. The statute enables the married woman to take, as her own, property of any kind, no matter how acquired by her, as well as the avails of her skill, labor, or personal exertions, 'as absolutely *as if she were unmarried.*' It then confers upon married women the power to engage in any business, no matter what, and to enter into contracts, whether engaged in business or not, and to sue separately upon those con-

tracts. If the statute stopped here, there would be ground for holding that it did not authorize this suit. But the statute goes much farther. It proceeds to authorize married women 'also' to sue separately for the recovery, security, or protection of their property; still more, they may sue separately 'for *torts* committed against *them*, as fully and freely *as if they were unmarried.*' No discrimination is made, in either case, between the persons charged with committing the tort. No exception is made in reference to the husband, if he happens to be the party charged with transgressing the rights conferred upon the wife by the statute. In other words, Congress, by these statutory provisions, destroys the unity of the marriage association as it had previously existed. It makes a radical change in the relations of a man and wife as those relations were at common law in this District. In respect of business and property, the married woman is given absolute control; in respect of the recovery, security and protection of her property, she may sue separately in *tort,* as if she was unmarried; and in respect of herself, that is, of her person, she may sue separately as fully and freely as if she were unmarried, 'for *torts* committed *against her.*' So the statute expressly reads. But my brethren think that, notwithstanding the destruction by the statute of the unity of the married relation, it could not have been intended to open the doors of the courts to accusations of all sorts by husband and wife against each other; and therefore they are moved to add, by construction, to the provision that married women may 'sue separately * * * for torts committed against them, as fully and freely as if they were unmarried,' these words: 'Provided however, that the wife shall *not* be entitled, in any case, to sue her husband separately for a tort committed *against her person.*'" (Emphasis original.)

In 1930 the Court of Appeals of the District of Columbia found itself constrained by the decision of the Supreme Court in the Thompson case, to hold that a wife might not maintain an action for damages for personal injuries sustained as a result of her husband's negligence, Spector v. Weisman, 59 App.D.C. 280, 40 F.2d 792.

It may well be that it is time for Justice Cardozo's traveler again to leave the shelter of the inn and to resume his journey, and perhaps to reach the next stage at which the remaining shackles on the wife's rights to resort to legal process for the vindication of her rights, will be entirely abrogated. As has been indicated, the philosophy that forms the basis for the majority opinion of the Thompson case, is that statutes derogatory of the common law must be strictly construed. This general principle has, however, largely lost its potency. Certainly, it is at least to be limited to cases of ambiguities in statutes and is hardly ever invoked if the legislative expression is clear and unambiguous. In such a situation this principle of statutory construction is generally no longer operative to frustrate or interfere with the fulfillment of the legislative will.

For example, in Socony Vacuum Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265, the Supreme Court, paying no heed to the rule of narrow construction, placed a broad interpretation on the Jones Act, 46 U.S.C.A. § 688, which expanded the right of a seaman to recover for personal injuries. The statute expressly permitted recovery for personal injuries resulting from the use of a defective appliance. The Court concluded that by implication the Act had also abrogated the doctrine of assumption of risk in such cases.

In Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082, the Court placed a liberal construction on the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., in spite of the fact that the statute was in derogation of the common law.

In Baltimore & Philadelphia Steamboat Co. v. Norton, 284 U.S. 408, 52 S.Ct. 187, 76 L.Ed. 366, the same attitude was adopted by the Supreme Court in respect to the Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901 et seq. It is clear, therefore, that the rule that statutes in derogation of the common law should be strictly construed has become obsolescent if not entirely obsolete.

Subsequently to the decision in the Thompson case many State statutes phrased similarly to the District of Columbia Married Women's Act have been construed as permitting a wife to sue her husband in tort.

In Brown v. Brown, 1914, 88 Conn. 42, 48, 89 A. 889, 891, 52 L.R.A.,N.S., 185, Ann. Cas.1915D, 70, in adhering to the more liberal view the court stated:

"In the fact that the wife has a cause of action against her husband for wrongful injuries to her person or property commit-

ted by him, we see nothing which is injurious to the public or against the public good or against good morals."

The Supreme Court of South Dakota in construing a similar statute in Scotvold v. Scotvold, 68 S.D. 53, 298 N.W. 266, referred to the Thompson case at length, but adopted the view of the dissenting Justices.

North Dakota, Oklahoma, and Wisconsin expressly declined to follow the Thompson case. Fitzmaurice v. Fitzmaurice, 62 N.D. 191, 242 N.W. 526; Courtney v. Courtney, 184 Okl. 395, 87 P.2d 660; Waite v. Pierce, 191 Wis. 202, 209 N.W. 475, 210 N.W. 822, 48 A.L.R. 276.

Among other cases that have also construed Married Women's Acts as permitting a wife to sue her husband in tort are, Katzenberg v. Katzenberg, 183 Ark. 626, 37 S.W.2d 696; Rains v. Rains, 97 Colo. 19, 46 P.2d 740; Gilman v. Gilman, 78 N.H. 4, 95 A. 657, L.R.A.1916B, 907. All of these decisions were rendered subsequently to the decision of the Supreme Court in the Thompson case.

In the District of Columbia, there has been a strong tendency in the direction of liberalizing substantive and procedural rights arising out of family relationships. For example, it was recently held contrary to preexisting law, that a wife may maintain an action against her husband for moneys expended by her for the support of their minor child. Schneider v. Schneider, 78 U.S.App.D.C. 383, 141 F.2d 542. On March 25, 1946, the United States Court of Appeals for the District of Columbia held that a minor child might maintain an action against his father for support, Simonds v. Simonds, 154 F.2d 326, not yet reported.

Recently Mr. Justice McGuire of this Court held that a child might maintain an action in tort for prenatal injuries, Bonbrest v. Kotz, D.C., 65 F.Supp. 138.

In view of all of the developments just recounted, it is not unlikely that if after the lapse of over 35 years, the question were to be presented to the Supreme Court again, it might reach a different conclusion than that at which it arrived in the Thompson case by a vote of four to three.

It is the view of this court, however, that counsel for the defendant is in error in relying on the Thompson case in support of his motion for summary judgment. The principle of that decision does not govern the disposition of the instant case. Prior to the alleged assault a decree of absolute divorce had been entered terminating the bond between plaintiff and defendant. In the District of Columbia a decree of absolute divorce does not take effect until the expiration of six months after its entry (D.C. Code, Title 16, Sec. 421). The alleged assault is averred to have taken place during this six months' interval. To be sure, in the meantime the marriage is not entirely dissolved. Nevertheless, the status of husband and wife lacks its original character. It has been held that the sole purpose of postponing the effective date of the final decree is to preclude remarriage with its possible consequences, during the pendency of any appeal that may be taken, Tillinghast v. Tillinghast, 58 App.D.C. 107, 25 F. 2d 531. The law does not contemplate that the marriage relationship shall continue until the expiration of the six months' time. In the interim the marriage status is held in suspended animation.

Thus in applying a similar statute, the Supreme Court of Wisconsin held that during the period between the entry of the divorce decree and its effective date, the husband is not to be deemed "husband" within the meaning of a provision of his wife's will, which devised and bequeathed certain property to him if he "is my husband at the time of my decease." Rogers v. Hollister, 156 Wis. 517, 146 N.W. 488. A somewhat similar conclusion was reached by the courts of Oklahoma in respect to a like statute. Atkeson v. Sovereign Camp, W. O. W., 90 Okl. 154, 216 P. 467, 32 A.L.R. 1108; In the matter of James H. Smith, 2 Okl. 153, 37 P. 1099.

In view of these circumstances, it does not seem to this court that the rule of Thompson v. Thompson and of Spector v. Weisman, is to be applied to a case in which a decree of absolute divorce between the parties has been entered prior to the alleged assault, even though the decree is not to become effective until the lapse of six months, and the assault took place during the intervening period.

I, therefore, reached the conclusion that this action may be maintained.

Defendant's motion for summary judgment is denied.