**Ann E. ARMIGER, Individually and as Executrix of the Estate of E. L. Armiger, Deceased et al., Appellants,**

v.

**REAL S. A. TRANSPORTES AEREOS, Appellee.**

**Marjorie H. ALBRECHT et al., Appellants,**

v.

**REAL S. A. TRANSPORTES AEREOS, t/a Real Airlines, Appellee.**

**Nos. 20417, 20418.**

United States Court of Appeals District of Columbia Circuit.

Argued March 3, 1967.

Decided April 13, 1967.

Mr. Eugene Gressman, Washington, D. C., attorney for appellants in No. 20417, argued for all appellants. Mr. William Howard Payne, Washington, D. C., was on the brief for appellants in No. 20418.

Mr. John L. Laskey, Washington, D. C., with whom Messrs. Harry A. Bowen and Thomas P. Jackson, Washington, D. C., were on the brief, for appellee.

Before FAHY, BURGER and TAMM, Circuit Judges.

FAHY, Circuit Judge:

The over-all problem presented by these appeals was decided by this court in Tramontana v. S. A. Empresa De Viacao Aerea Rio Grandense, 121 U.S.App.D.C. 338, 350 F.2d 468, cert. denied, 383 U.S. 943, 86 S.Ct. 1195, 16 L.Ed.2d 206, which should be read in connection with this opinion. These wrongful death actions grew out of a mid-air plane collision over Brazil in which eighteen members of the United States Navy Band perished. Appellants respectively claim through those who thus met their deaths. At the time of the collision the members of the band were aboard a United States Navy airplane. Appellee's commercial craft which collided with our Navy airplane was on an intranational flight. The suits were instituted in the District of Columbia against the Brazilian airline, upon which service of process was effected at its offices here.

In all of the cases the trial judge granted summary judgment for appellee as to all amounts exceeding the equivalent of 100,000 cruzeiros, the maximum recovery permitted by the Brazilian Code of the Air. With the consent of appellee the trial judge also granted summary judgment for Mrs. Tramontana in the amount of 100,000 cruzeiros, approximately 170 dollars as that time. Mrs. Tramontana appealed the trial court's application of

the Brazilian limitation on recovery, and the other plaintiffs, now appellants, agreed that their cases should be stayed pending the appeal of the *Tramontana* decision, "counsel having stipulated that the final ruling in said case will be controlling herein."

After this court affirmed the judgment in *Tramontana,* appellee moved the District Court to certify the present cases to the District of Columbia Court of General Sessions because appellants' claims were limited to the equivalent of 100,000 cruzeiros respectively and therefore fell below the District Court's jurisdictional requirement of 10,000 dollars. The motion was granted and appellants appeal from the ensuing order.

Appellants take the position that the stipulation does not preclude a greater recovery by some of them than was awarded in *Tramontana.* Their position is that appellant in *Tramontana* was a resident of Maryland, where the *lex loci delicti* applies, and in deciding that Brazilian law, rather than the law of the forum—the District of Columbia—applied, we relied significantly upon lack of interest in the subject matter attributable to this jurisdiction in comparison with the interest of Brazil. Appellants pursue the contention by urging that some of them reside in jurisdictions which would permit unlimited recovery if suit were instituted there, and that under the "contacts" theory of conflict of laws which we adopted these appellants may recover in this jurisdiction without regard to the limitations of Brazilian law because neither the stipulation nor the *Tramontana* case governed such a situation.

Even if we were to agree that the stipulation should be construed so favorably to appellants as to permit independent pursuit of their cases, notwithstanding the ruling that the Brazilian law governed in *Tramontana,* the overall rationale of that decision governs the present cases as well and is adverse to appellants' position. True, the *Tramontana* opinion relies in part upon the fact that appellant there was a resident of Maryland. We said that Maryland rather than this jurisdiction had a significant interest in appellant's recovery, for "if she is unable to support herself" it is on the citizens of Maryland that the burden "is likely to fall in the first instance." 121 U.S.App. D.C. at 343, 350 F.2d at 473. Nevertheless the dominant theme of the *Tramontana* decision is the great interest of Brazil, "the scene of the fatal collision." We pointed out that appellee is a Brazilian corporation, which, as a national airline, is an object of concern in terms of national policy. We said:

> To Brazil, the success of this enterprise is a matter not only of pride and commercial well-being, but perhaps even of national security. The limitation on recovery against airlines operating in Brazil was enacted in the early days of commercial aviation,[8] no doubt with a view toward protecting what was then, and still is, an infant industry of extraordinary public and national importance. The Brazilian limitation in terms applies only to airplane accidents, unlike the Massachusetts provision rejected in Kilberg [v. Northeast Airlines, Inc., 9 N.Y.2d 34, 211 N. Y.S.2d 133, 172 N.E.2d 526], which was an across-the-board ceiling on recovery for wrongful death in that state. The focus of Brazilian concern could hardly be clearer.

121 U.S.App.D.C. at 341, 350 F.2d at 471 (footnote omitted).

We also said that we were inclined to think that, even as between the law of Maryland and the law of Brazil, we would be without warrant to look to Maryland law and that in striking a balance between the law of Maryland and the law of Brazil the weight to be accorded the interests of Brazil would remain unchanged. 121 U.S.App.D.C. at 343, 350 F.2d at 473.

So too as to the interests of other jurisdictions in which appellants respectively have residence, in comparison with the interests of Brazil in these cases.

Affirmed.