Luna Dale **ROSCOE**, Appellant,

v.

Joseph A. **ROSCOE**, Appellee.

No. 20089.

United States Court of Appeals
District of Columbia Circuit.

Argued November 10, 1966.

Decided April 14, 1967.

Petition for Rehearing En Banc
Denied June 19, 1967.

Mr. Joseph H. Koonz, Jr., Washington, D. C., with whom Messrs. Lee C. Ashcraft and Martin E. Gerel, Washington, D. C., were on the brief, for appellant.

Mr. Thomas J. Scanlon, Washington, D. C., with whom Mr. Howard J. McGrath, Washington, D. C., was on the brief, for appellee.

Before DANAHER, Circuit Judge, and EDWARDS,* Circuit Judge of the United States Court of Appeals for the Sixth Circuit, and TAMM, Circuit Judge.

DANAHER, Circuit Judge.

This appellant on August 31, 1963 was injured in a North Carolina automobile accident, allegedly caused by her husband's negligence. On June 15, 1965, she brought suit against her husband in the District Court of the District of Columbia. The record shows that on September 13, 1965, the parties stipulated their marriage in 1961 since which date both had been domiciled in the District of Columbia as husband and wife. Thereupon, the defense moved for summary judgment, specifically asserting that this appellant's claim was barred by reason of interspousal immunity. On September 21, 1965, the husband died, and a suggestion of his death was noted of record on October 27, 1965. By consent, the appellant's time to respond to the motion for summary judgment was extended to January 1, 1966. Although no substitution of a representative of the decedent had yet been made, the District Court presently granted the motion for summary judgment.** The appellant thereupon moved immediately for reconsideration. An order of denial was thereupon entered, and this appeal followed.

Our questions hereinafter discussed involve the timeliness of the appeal, the appellant's right to maintain her action, and the applicability of FED.R.CIV.P. 25 (a) (1) when read with Rule 6(b).

I

▮ Initially we reject the appellee's contention that the notice of appeal was not timely. Summary judgment had been entered on January 10, 1966, and appellant that same day filed her motion for reconsideration.[1] The order denying that motion was entered on February 3, 1966; and the notice of appeal from that order was filed February 24, 1966. The timely filing of the motion for reconsideration terminated the running of the time within which the appeal might have been taken from the January 10th order granting summary judgment.

* Sitting by designation pursuant to 28 U.S. C. § 291(a).

** The only "party" then before the District Court was the plaintiff; even so, as a matter of convenience, we have hereinafter referred to the decedent as "appellee."

1. In her motion for reconsideration the appellant represented to the court that the matter of a substitution of a party for the decedent was "being undertaken and should be accomplished in the near future." She further pleaded that "a proper party must be substituted" and asked that the order granting summary judgment be rescinded and that the parties be given "an additional 45 days to permit the substitution of a proper party for the deceased defendant."

Thus the appellant had thirty days within which to appeal from the February 3, 1966 order. Yates v. Behrend, 108 U.S.App.D.C. 56, 280 F.2d 64 (1960); Calvin v. Calvin, 94 U.S.App.D.C. 42, 44, 214 F.2d 226, 228 (1954).

## II

The Supreme Court observed in Richards v. United States [2]:

"The general conflict-of-laws rule, followed by a vast majority of the States, is to apply the law of the place of injury to the substantive rights of the parties." (Footnote 24 omitted.)

At the same time the Court observed that recently there had been "a tendency on the part of some States to depart from the general conflicts rule in order to take into account the interests of the State having significant contact with the parties to the litigation." [3] The Court deemed it desirable that flexibility be preserved since there may be situations where the application of the older rule "might appear inappropriate or inequitable." [4]

The problem here becomes acute because of the appellee's reliance upon the doctrine of interspousal immunity. The appellee contends that if the deceased husband had lived, the appellant wife could not in this jurisdiction successfully maintain an action against him, and additionally, that following his death, we should not here be concerned with revival of the action for the simple reason that there "never was a cause of action at common law." [5]

On the other hand, General Statutes of North Carolina (1966), section 52–5 provides:

"A husband and wife have a cause of action against each other to recover damages sustained to their person or property as if they were unmarried." [6]

---

2. 369 U.S. 1, 11, 12, 82 S.Ct. 585, 592, 7 L.Ed.2d 492 (1962). And see Boland v. Love, 95 U.S.App.D.C. 337, 222 F.2d 27 (1955) and Giddings v. Zellan, 82 U.S.App.D.C. 92, 160 F.2d 585 (1947).

    And such is the law in North Carolina. Shaw v. Lee, 258 N.C. 609, 129 S.E.2d 288 (1963).

3. 369 U.S. at 12, 82 S.Ct. at 592. In Williams v. Rawlings Truck Line, Inc., 123 U.S.App.D.C. 121, 357 F.2d 581 (1965), where an accident had occurred in this District, we found a "false conflicts" situation where the State of New York was the only jurisdiction which might have an interest in having its law applied as to the possible liability of one of its citizens as "owner" (under New York law) of a car in which the plaintiff had been riding. Cf. Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158, 88 A.L.R. 170 (1933).

4. 369 U.S. at 13, 82 S.Ct. 585.

    Compare the discussion in White v. King, 244 Md. 348, 223 A.2d 763 (1966) with Macey v. Rozbicki, 18 N.Y.2d 289, 274 N.Y.S.2d 591 (1966). In the concept of "flexibility" we approached the question presented in Tramontana v. S. A. Empresa DeViacao Aerea Rio Grandense, 121 U.S.App.D.C. 338, 341, 350 F.2d 468, 471 (1965), cert. denied, Tramontana v. Varig Airlines, 383 U.S. 943, 86 S.Ct. 1195, 16 L.Ed.2d 206 (1966), and concluded that under the circumstances there presented, the law of the place of the wrong should control a suit brought here respecting the damages recoverable for death resulting from an air accident in Brazil. And see Armiger v. Real S.A. Transportes Aereos, 126 U.S. App.D.C. ——, 377 F.2d 943 (Apr. 13, 1967).

5. Appellee relies particularly upon Thompson v. Thompson, 218 U.S. 611, at 617, 31 S.Ct. 111, at 112, 54 L.Ed. 1180, 30 L.R.A.,N.S., 1153 (1910) where the Court observed that the "statute [D.C.Code § 30–208 (1961)] was not intended to give a right of action as against the husband" but only to allow a wife in her own name and without joining her husband to sue a stranger as tort-feasor.

6. The common law disability of spouses to sue each other in tort actions has been completely removed in North Carolina. Foster v. Foster, 264 N.C. 694, 142 S.E. 2d 638 (1965); Cox v. Shaw, 263 N.C. 361, 139 S.E.2d 676 (1965).

    Compare LaChance v. Service Trucking Co., 215 F.Supp. 162 (D.Md.1963), where a claim for contribution was held to lie, citing North Carolina law, with Yellow Cab Co. of D. C. v. Dreslin, 86 U.S.App. D.C. 327, 181 F.2d 626 (1950) where a claim for contribution was rejected. In Yellow Cab a wife was injured while riding in her husband's car which collided

█ Obviously, this appellant could have instituted action against her husband in North Carolina. Since her claim was transitory, she was entitled unless barred by our law to pursue vindication of her right in the courts of the District of Columbia. Ormsby v. Chase, 290 U.S. 387, 54 S.Ct. 211, 78 L.Ed. 378, 92 A.L.R. 1499 (1933); Baltimore & Ohio Railroad Co. v. Joy, 173 U.S. 226, 231, 19 S.Ct. 387, 43 L.Ed. 677 (1899).

Moreover, North Carolina has provided that except for certain categories specifically enumerated in G.S. section 28–175, all causes of action survive the death of the person against whom they have accrued. McIntyre v. Josey, 239 N.C. 109, 79 S.E.2d 202 (1953).[7]

█ Measured in terms simply of "significant relationships" as bearing upon the choice of law here to be applied, North Carolina would seem to have no interest in this litigation beyond its entitlement to our respectful deference to its law, as we conceive it to be. But under the usual rule of comity we would normally accord recognition to such rights as had there accrued unless enforcement of North Carolina law would violate some strong policy of this jurisdiction.

On the other hand, when suit was brought, the parties were both domiciled in the District of Columbia where it has long been our policy that "the law's emphasis ordinarily is on liability, not immunity, for wrongdoing."[8] That the appellant was the wife of the tort-feasor would seem to entitle her no less to care than to carelessness, just as had she not been married to the appellee, she would have been entitled to compensation for her injuries if negligently caused.[9] Except for the situs of the accident, the significant relationships of the parties were local.

Accordingly, the appellee argues, Thompson v. Thompson, *supra* note 5, stands as an insuperable bar to her recovery. There as District residents a wife had sued her husband charging in three counts that he had assaulted her on three successive days and additionally had assulted her on four different occasions. The appellant had relied upon the District of Columbia Code, section 1155 (31 STAT. 1189, 1374) now D.C.CODE § 30–208 (1961), which provides in pertinent part:

"Married women shall have power * * * to sue separately * * * for torts committed against them, as fully and freely as if they were unmarried * * *."

This court rejected her claim basing its holding "upon the proposition that the parties to this action are one in law."[10] The promotion of the property

with a taxicab. We ruled that there could be no liability from the husband to his wife despite his concurrent negligence. Accordingly there was no joint liability between the Cab Company and the husband as to her, and so there could be no contribution recoverable from the husband on the wife's claim. We observed that preservation of domestic peace and felicity is the policy upon which the rule of immunity between husband and wife is based. The spouses resided and the injury occurred in the District of Columbia.

7. Our Code likewise now provides for the survival of a right of action which "has accrued for any cause" prior to the death of any person. D.C.CODE § 12–101 (Supp. V, 1966). It is additionally our law that the substitution of parties in civil actions in our courts is to be governed by the Federal Rules of Civil Procedure. D.C. CODE § 12–102 (Supp. V, 1966).

8. Cf. President and Directors of Georgetown College v. Hughes, 76 U.S.App.D.C. 123, 140, 130 F.2d 810, 827 (1942).

9. D.C.CODE § 12–101 (Supp. V, 1966) provides as pertinent:
"On the death of a person * * * against whom a right of action has accrued for any cause prior to his death, the right of action survives * * * against the legal representative of the deceased. In tort actions for personal injuries, the right of action is limited to damages for physical injury, excluding pain and suffering resulting therefrom."

10. Thompson v. Thompson, 31 App.D.C. 557, 561 (1908).

rights and interests of married women was one thing, but such statutes were not intended to interfere with or undermine conjugal relations nor to disturb the peace and happiness of the married couple, the court seemed to reason.

■ The Supreme Court affirmed,[11] considering "debatable" the question of whether opening the doors of the courts to accusations of all sorts, including assaults, slander, libel and injuries to property, by husband against wife, and vice versa, "would be promotive of the public welfare and domestic harmony."[12] Whatever other means of redress might be open to the wronged wife, the majority held that under the statute she had gained no independent right of action against her husband for his assault and battery upon her person.[13]

As in *Thompson,* so in other cases touching upon the problem in this jurisdiction,[14] implicitly if not expressly, the rationale may be seen to depend upon the assumption that an action by one spouse against the other will tend to destroy domestic tranquility and conjugal happiness.

But where the basis of the rule has disappeared or has been eliminated, the result, it is urged, should coincide with the facts. So it developed in Steele v. Steele [15] where a decree of *absolute* divorce between the parties had been entered prior to the assault complained of.

In Jones v. Pledger [16] the *Thompson* rule was again considered but was found not applicable in that an independent ground for maintenance of the action became apparent. The husband after an earlier limited divorce had fatally shot his wife and thereupon took his own life. Suit against the estate of the deceased husband was permitted in behalf of the minor son of the marriage. The child's right was seen to derive from our Wrongful Death Act, D.C.CODE § 16–1201 (1961).

In the District of Columbia Court of Appeals in Mountjoy v. Mountjoy,[17] it had been argued that the fundamental bases for the doctrine no longer existed and that the bar to a tort action between husband and wife should be eliminated. That court declined to afford relief, being of the view that any change in a rule so long established in this jurisdiction should be accomplished by congressional enactment.[18]

---

11. Thompson v. Thompson, 218 U.S. 611, 31 S.Ct. 111, 54 L.Ed. 1180, 30 A.L.R. 1153 (1910), Harlan, Holmes and Hughes, JJ., sharply dissenting and pointing out that the policy, wisdom, or justice of the legislation were not for the Court.

12. Id. at 618, 31 S.Ct. at 112.

13. This court applied the *Thompson* rule in Spector v. Weisman, 59 App.D.C. 280, 40 F.2d 792 (1930) where the wife sought recovery for premarital injuries incurred through the negligence of the man she later married.
   In Ewald v. Lane, 70 App.D.C. 89, 104 F.2d 222 (1939), this court pointed out that *Thompson,* a four to three decision, did not bar a wife's right of action against her husband's co-conspirators who had combined with him in defaming her. It could not be urged that such a suit would "destroy whatever modicum of harmony may survive between contending spouses." 70 App.D.C. at 91, 104 F.2d at 224.

14. See Yellow Cab Co. of D. C. v. Dreslin, *supra* note 6, and cases cited in note 13, *supra*; the same is true of cases in yet other jurisdictions. See, e. g., Torts —Interspousal Immunity to the Personal Tort, 6 WASHBURN L.J. 199 (Fall, 1966).

15. 65 F.Supp. 329 (D.D.C.1946). There Judge Holtzoff traced out the trend in cases which had considered the problem.

16. 124 U.S.App.D.C. 254, 256–257, 363 F.2d 986, 988–989 (1966). Judge Fahy there commented that the doctrine of interspousal immunity would not bar this suit. "The reasons for the immunity have completely disappeared and it should be given no effect."

17. 206 A.2d 733 (D.C.App.1965).

18. This court denied a petition for allowance of an appeal by its order of April 14, 1965, 121 U.S.App.D.C. 27, 347 F.2d 811. The husband and wife had been separated for some three years at the time of an automobile accident whereby

We have been at some pains to note the state of our law, particularly because of the deference we are bound to accord to the Supreme Court's decision in Thompson v. Thompson, *supra,* in which that Court construed the very statute under which a wife is given a right to maintain in her sole name an action against anyone—but her husband. Whether reversal of the *Thompson* holding is to be achieved by congressional enactment as the District of Columbia Court of Appeals suggests, or after our consideration of an issue properly raised respecting a claim arising in the District of Columbia, vindication of which is sought by one domiciled spouse against the other, we need not here probe further, nor intimate a present view as to our possible position.

We deem it sufficient to note that this appellant wife had gained a right of action under the law of North Carolina; that right followed her here; the husband died, and upon his death the basis of the doctrine disappeared. No longer was there in jeopardy the domestic tranquility of the spouses. No longer was there in existence a predicate for the assertion of a policy which would bar continued maintenance of an action designed to vindicate the right which had so accrued to the wife.[19] Balancing the respective interests in such circumstances, and with the permissible flexibility open to us as earlier discussed, we may apply the law of North Carolina.

### III

In the circumstances just mentioned we come to the application of FED.R.CIV.P. 25(a) (1) which provides in pertinent part:

"If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. * * * Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party."

Here not only had the 90-day period not expired when the court entered summary judgment, the appellant by her motion for reconsideration had specifically invoked the discretion of the court.

Rule 6(b) provides pertinently that when

"by these rules * * * an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed * * *."

Originally the Rule had precluded an extension of time for taking action under Rule 25(a) (1), but by purposeful amendment, it was sought to relieve against the hardship of the Court's holding in Anderson v. Yungkau, 329 U.S. 482, 67 S.Ct. 428, 91 L.Ed. 436 (1947). It was intended that liberal effect be given to the 1963 amendment. Graham v. Pennsylvania Railroad, 119 U.S.App.D.C. 335, 342 F.2d 914 (1964),[20] cert. denied, 381 U.S. 904, 85 S.Ct. 1446, 14 L.Ed.2d 286 (1965).

We are constrained to reverse for further proceedings not inconsistent with this opinion.

Reversed.

---

the wife had sustained injuries allegedly caused by the negligence of her husband. Judge Wright in his dissent collected and cited various pertinent authorities in support of his view that the appeal should have been allowed to the end that this court explore the policy problems underlying the immunity doctrine.

19. Franklin v. Wills, 217 F.2d 899 (6 Cir. 1954).

20. There the court found no adequate basis for relief on the ground of excusable neglect. A succinct history of the 1963 amendment to Rule 25(a) (1) appears in n. 1 of the dissenting opinion.