## SCHNEIDER v. SCHNEIDER.

### No. 8568.

United States Court of Appeals
District of Columbia.

Argued Feb. 14, 1944.

Decided March 13, 1944.

Mr. Edmund D. Campbell, of Washington, D. C., for appellant.

Mr. Arthur G. Lambert, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and EDGERTON and ARNOLD, Associate Justices.

ARNOLD, Associate Justice.

Appellant is the divorced wife of the appellee. They have one son. She brings this action (1) on her own behalf, to compel appellee to reimburse her for money expended for support of their son within the past four and one-half years, and (2) as next friend of the son, to require appellee to provide for his future support. The court below entered a summary judgment denying all relief, from which this appeal is taken.

The record discloses that the father is a resident of and domiciled in the District of Columbia. The mother resides in a Maryland suburb of the District. Prior to the divorce both parties lived in the District of Columbia as husband and wife. In 1938 they entered into a collusive written agreement providing that the mother should go to Reno, Nevada, to obtain a divorce, the entire cost of which was to be borne by the father. The agreement further provided that the father was to furnish "clothing and all other necessaries for his son, including medical care, educational expenses and traveling outlays, the only exception being that when their said son is with his mother the latter shall provide him food".

Pursuant to this agreement the mother obtained a divorce in Reno, Nevada, in August, 1938. The Nevada decree, in addition to alimony, contained a provision that the mother should have custody of the son and receive $50 a month for his support. The mother's attorney in the Nevada divorce suit was selected and paid by the father. Prior to the divorce he was directed by the father's attorney in Washington to "let the decree provide $50.00 a month for the support of the child." The letter continued "There will be no difficulty about this but I will suggest to Mrs. Schneider (the appellant) to keep an accurate account of her disbursements on the son's account. I think that you now have all necessary data so that you may push the matter to a conclusion". It is apparent from this record that the provision of $50 a month for the son's support was inserted in the Nevada decree as a result of the father's representation that he would repay the mother for the additional expenditures for necessaries described in their collusive agreement. There is nothing to indicate the inadequate provision of $50 a month for the son's support was determined by the Nevada court on its merits. The record shows that the father is worth over a million dollars.

For a period of four and one-half years the mother has spent the sum of $1,712.49 for clothing, education and travel for the son in addition to the $50 a month provided by the decree, and has kept an account of her expenditures as suggested by the father during the divorce proceedings.

The motion for summary judgment on this record raises the question whether a father, by instigating and abetting a collusive divorce decree in a foreign jurisdiction, can escape the obligation for adequate support of his son imposed on him by the law of his domicile. The mere statement of the question gives us the answer.

Conceding the presumption that the Nevada court had jurisdiction to grant the mother a divorce, in spite of the apparent improbability of bona fide domicile,[1] it is nevertheless clear that court had no jurisdiction over the obligation of the father to support his son. The domicile of the father was in the District of Columbia. The domicile of the son was that of the father and could not be changed by the voluntary act of the son even if he had accompanied his mother to Nevada.[2] The father's voluntary appearance in the Nevada court did not give that court jurisdiction to determine his obligation for sup-

[1] Williams v. North Carolina, 1942, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273.

[2] "It is contended that the order for permanent alimony is not binding upon Sadie because she was not a resident of Georgia at the time it was entered. Being a minor, Sadie's domicile was Georgia, that of her father; and her domicile continued to be in Georgia until entry of the judgment in question. She was not capable by her own act of changing her domicile. Neither the temporary residence in North Carolina at the time the divorce suit was begun, nor her removal with her mother to South Carolina before entry of the judgment, effected a change of Sadie's domicile. It is true that under the Georgia Code a minor may acquire a domicile apart from the father if he has 'voluntarily relinquished his parental authority.' But the mere fact that the parents were living separately at the time the suit for divorce was brought and that Sadie was with her mother does not establish such relinquishment." Yarborough v. Yarborough, 1933, 290 U.S. 202, 211, 54 S.Ct. 181, 185, 78 L.Ed. 269, 90 A.L.R. 924.

port because neither the father nor the son had a Nevada domicile.[3]

For these reasons the duty imposed by the law of the District of Columbia on the father to provide adequate support for his son still exists in spite of the Nevada decree. The measure of that duty is the present need of the son and the ability of the father to provide for it. The sum of $50 a month is not adequate for the care and education of a son of eighteen under the circumstances disclosed by the record. It is, therefore, the duty of the court in the District of Columbia to compel the father to provide adequate support under its general equity powers.

A suit by the mother as next friend is a proper proceeding to enforce the rights of the son. We are aware of the fact that some decisions in other jurisdictions give the child no rights to enforce the duty of support either by an action in his own name or by a proceeding in the name of a next friend.[4] We believe, however, that these cases are contrary to the established principle that where a duty exists equity will provide a remedy for its violation. In the case of Wedderburn v. Wedderburn[5] we upheld an action, brought by a mother as next friend, for support of the child against a divorced father. The case of Rapeer v. Colpoys[6] relied on by appellee does not affect the general equity powers of the courts in the District of Columbia to enforce the duty of support. It holds only that a decree against a divorced parent for support cannot be enforced by imprisonment for contempt under our Code.[7]

In addition to the mother's cause of action as next friend to enforce the duty of future support, she sues in her own name for $1,712.49, which she paid on account of past support at the suggestion of the father. The father's sole defense to this cause of action is that it is based on a void collusive agreement to obtain a divorce. We find no merit in that defense. The duty of support exists entirely apart from the collusive agreement. The mother's cause of action is based, not on the agreement, but on the fact that at the suggestion of the father she advanced money for his son's support. She had the right to rely on the father's representation that she would be repaid and, therefore, is not in the position of a volunteer. The provision in the Nevada decree to which she consented might in ordinary circumstances be binding on her rights, as distinguished from the rights of the child. But it does not affect this case because at the time of the decree the father represented to the mother's attorney that the sum of $50 a month provided in the decree was not intended to be the total obligation for support which he voluntarily recognized. Her consent to the terms of the decree was given on this representation and the father is now estopped from claiming that the mother's consent to a decree entered after such a representtation is a defense against her. And particularly is this true when, as is the case here, it is shown that the father was largely in control of the divorce proceedings and himself directed the form and terms of the decree. She is, therefore, in much the same position as a merchant who has furnished the minor child with necessaries on the representation of the father that he will pay for them.

Appellee has filed an affidavit in this court that his son has entered the Navy since the filing of this appeal. He argues that this makes the case for future support moot. Certainly the fact of his enlistment should be considered in determining the

[3] Yarborough v. Yarborough, 1933, 290 U.S. 202, 54 S.Ct. 181, 78 L.Ed. 269, 90 A.L.R. 924.

[4] Hooten v. Hooten, 1929, 168 Ga. 86, 147 S.E. 373.

[5] 1917, 46 App.D.C. 149.

[6] 1936, 66 App.D.C. 216, 85 F.2d 715.

[7] D.C.Code 1940, § 16—415.

"We bear in mind Lesh v. Lesh, 21 App. D.C. 475, to the effect that Section 75 is not a limitation upon the power of the Supreme Court of the District of Columbia but a mere legislative recognition of a power which, apart from statute, exists in a tribunal having general equitable powers.

And we do not say that Section 75 operates as a limitation upon the power of the Supreme Court of the District of Columbia to issue a maintenance order against a divorced father for the support of his children. All that we rule is that Section 102 is a limitation upon the power of the Supreme Court of the District of Columbia in respect of the manner of enforcing its orders, and that it permits enforcement by imprisonment for contempt of 'decrees only directing the payment of money' only in cases especially provided for, * * *." Rapeer v. Colpoys, 1936, 66 App.D.C. 216, 219, 85 F.2d 715, 718.

amount of money which is now adequate in view of the father's circumstances. However, it does not make the case moot nor entitle the defendant to a dismissal even though the court may find that the son requires no more funds for the present than he is already receiving. If such be the finding, the case should remain on the docket so that if the son becomes discharged for any reason the court may hear the question as to additional liability under these changed circumstances.[8]

The judgment of the court below is, therefore, reversed and the case remanded for a hearing (1) to determine the liability of appellee on account of appellant's necessary past disbursements for support of the son and to order payment thereof, and (2) to determine and order the payment of an adequate sum for the future care and education of the son in the light of the financial circumstances of the father.

Reversed and remanded.

---

[8] "Even in the case of a child apparently able to earn its own living, the father must still remain liable for its support in cases of illness or emergency which make support from him necessary." Madden on Persons and Domestic Relations, § 121, p. 408 (1931).