## SIMONDS v. SIMONDS.
### No. 9108.

United States Court of Appeals
District of Columbia.

Argued Feb. 5, 1946.

Decided March 25, 1946.

---

[5] 36 Stat. 825, § 3, 18 U.S.C.A. § 399.

[6] La Page v. United States, 8 Cir., 146 F.2d 536; Hill v. United States, 8 Cir., 150 F.2d 760. Cf. United States v. Reed, 2 Cir., 96 F.2d 785.

Mr. Jean M. Boardman, of Washington, D. C., with whom Mr. Oscar J. See, of Washington, D. C., was on the brief, for appellant.

Mr. Philip Wagshal, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and CLARK and WILBUR K. MILLER, Associate Justices.

CLARK, Associate Justice.

This is an appeal from an order of the District Court directing the defendant, appellant here, to pay $100 per month to his minor daughter, appellee here, for her support. The order also provided that appellant should pay a $350 counsel fee to the child's attorney.

The record discloses that appellant and his wife were divorced in Connecticut in 1931. Appellant made no appearance in that proceeding; custody of the child went to the mother and no provision was made for her maintenance. Between 1931 and 1944 the mother arranged for the child to live at various places, including the Connecticut home of the maternal grandmother. It does not appear that during this period the father contributed anything to the support of the child. In December of 1943 appellant father invited the daughter to spend the Christmas holidays with him and his present wife at their home in Montgomery County, Md. The child accepted and during her holiday stay was invited to make her permanent home with them. After obtaining her mother's consent, she moved into her father's home and remained there until March 31, 1944.

The trial court found that: "* * * After she had lived there about a month a lack of congeniality developed between her and defendant following which defendant did not talk to her much and plaintiff felt that she was not wanted in his home. On occasions he failed to leave food for her when he and his wife did not eat dinner at home." As a consequence of growing friction and in the face of apparent disinterest in her upbringing on the part of her father and his present wife, the plaintiff, without the defendant's consent, left his household on March 21, 1944, and went to live with neighbors who had befriended her. Thereafter, on April 13, 1944, this action was commenced in the District Court by the child, through her mother as "next friend".

Among other points, the appellant urges that the action begun in this jurisdiction should have been governed by the law of Maryland since it was there that he maintained his home and the alleged abandonment took place. Further, the daughter admittedly did not reside in the District of Columbia. However, we think the District Court was correct in applying the law of this jurisdiction, for as we see it the plaintiff was, by operation of law, a domiciliary of the District.

■ Customarily a legitimate child takes the domicile of the father if he be living. Schneider v. Schneider, 78 U.S.App.D.C. 383, 141 F.2d 542; Deming v. United States, 59 App.D.C. 188, 37 F.2d 818; See also: Delaware, L. & W. R. Co. v. Petrow-

sky, 2 Cir., 250 F. 554; Bjornquist v. Boston & A. R. Co., 1 Cir., 250 F. 929, 5 A.L.R. 951. One of the recognized exceptions to this basic rule has grown from the abandonment situation. Where the father is found to have abandoned the child it will take the domicile of the mother during the remainder of its minority, provided, of course, that the mother has not also abandoned the offspring. See Guardianship of Vance, 92 Cal. 195, 28 P. 229; People v. Dewey, 23 Misc. 267, 50 N.Y.S. 1013; Elliott v. Elliott, 181 Ga. 545, 182 S.E. 845. Also, Restatement of Conflicts, § 33(1).

It has been suggested that where the child does not take up residence with the mother, though abandoned by the father, its domicile will continue to be that of the father. Guardianship of Vance, supra. We can see no sound justification for applying such a rule in a case like the one before us. It seems clear that the mother, though her daughter was not living with her, had not abandoned the child. Not only had the mother been awarded custody of the daughter under the Connecticut divorce decree, but it appears that the child's changes in place of residence had been conditioned upon the mother's approval.[1] Hence, even if we were to conclude that by going to live with her father the daughter took his domicile we think that when he, by conduct unfitting a responsible parent, caused her to seek residence elsewhere, he abandoned her and by so doing the law operates to affirm the child's domicile as that of her mother which was the District of Columbia. We observe also that the father owned a business in the District of Columbia and since the suit was begun has moved from Maryland to this jurisdiction. In the light of the foregoing we think the trial court was correct in applying the law of the District of Columbia.

As a second major contention the appellant urges that the common law disability of a minor child to sue its parents for support is controlling against the appellee. In support of this proposition several state authorities are cited.[2] While we have carefully considered the criticism of Schneider v. Schneider, 78 U.S.App.D.C. 383, 141 F.2d 542, 544, presented by appellant, we are of the opinion that the case was correctly decided and moreover that it is determinative on this point in this jurisdiction. We there said: "A suit by the mother as next friend is a proper proceeding to enforce the rights of the son. We are aware of the fact that some decisions in other jurisdictions give the child no rights to enforce the duty of support either by an action in his own name or by a proceeding in the name of a next friend. We believe, however, that these cases are contrary to the established principle that where a duty exists equity will provide a remedy for its violation."

Among the more basic reasons advanced for applying the disability is that it was intended to preserve domestic harmony. Where, as here, the facts of the family situation are such as to completely negative this argument, we think it would be a miscarriage of justice to refuse relief to the child. Appellant concedes that the mother, in her own name, could sue to collect support money for the child, also, that a third party supplying necessaries to the daughter could collect for their reasonable value in an action against the father. Thus, the real difference between appellant's position and that of appellee is that the former argues that the desired result can only be accomplished by indirection while the latter has taken the shortest route to the objective.

Appellant further contends that it was error for the trial court to order the payment to be made directly to the minor child. We think the record supports this directive. The lower court had before it the adult with whom the appellee had been making her home. It also had the opportunity to observe the minor who is now about 18 years of age, and we find nothing in the record to indicate that the daughter, considering the environmental circumstances, is not competent to receive and manage the expenditure of this support money.

Similarly, we think the District Court correct in ordering appellant to pay counsel fees to appellee's attorney.

---

[1] See Spurgeon v. Mission State Bank, D.C., 55 F.Supp. 305, 308, as to the effect on domicile of the parent's right to custody and control, where separate residences may be established.

[2] Huke v. Huke, 44 Mo.App. 308; Worthington v. Worthington, 212 Mo.App. 216, 253 S.W. 443; Rawlings v. Rawlings, 121 Miss. 140, 83 So. 146, 7 A.L.R. 1259; Sikes v. Sikes, 158 Ga. 406, 123 S.E. 694; Hooten v. Hooten, 168 Ga. 86, 147 S.E. 373; Yost v. Yost, 172 Md. 128, 190 A. 753. Also cited was Yarborough v. Yarborough, 290 U.S. 202, 54 S.Ct. 181, 78 L.Ed. 269, 90 A.L.R. 924, where the Supreme Court was applying Georgia law.

Again, to accept the appellant's argument would be to require another suit in order to finally adjust the rights of the parties. The trial court simply completed the task it had before it. That legal services were necessary to the minor is hardly open to question. It seems obvious that a father so lacking in parental consciousness could only be brought to an acceptable level of social responsibility through legal process. He should bear the full cost of such enforced improvement.

Affirmed.