MURIEL COHEN, MURIEL COHEN, next friend of Diane Lea Markel,

*vs.*

ADOLPH MARKEL, JR.

*New Castle, February 23, 1955.*

*H. Albert Young* and *Clement C. Wood* of Young & Wood, Wilmington, for plaintiffs.

*David B. Coxe, Jr.,* of Coxe, Booker & Walls, Wilmington, for defendant.

MARVEL, Vice Chancellor: Muriel Cohen brings this suit individually and on behalf of her infant daughter, Diane Lea Markel,

for the support of the latter who is the only child born of the former marriage of Mrs. Cohen and the defendant. Defendant is a resident of New Castle County. Diane lives with her [1] mother and stepfather in Pennsylvania and will be nine next October. The complaint charges that an agreement under which the defendant supported his child has expired and has not been renegotiated. It is also alleged that since January, 1953, Mrs. Cohen, has been required to pay for the child's maintenance in the absence of any help from defendant. The mother seeks recovery of the moneys so spent and an order directing the father adequately to support his child in the future.

Defendant has moved to dismiss on the grounds that this Court is without jurisdiction to order the defendant to support his child and that the complaint fails to state a claim upon which relief can be granted.

*Sec.* 702 of *Title* 13, *Delaware Code* places the duty of supporting a child solely on the father if he is living and able to provide support. This section now found in the *Code* under the *Title, "Domestic Relations",* is derived from an identical section enacted in 1943 and found as Chapter 159 of Vol. 44, *Laws of Delaware.* That the primary obligation of providing support and maintenance for a child is the father's is also the decisional law of the state, *Hobbs v. Lokey,* 7 *W.W.Harr.* 408, 37 *Del.* 408, 183 *A.* 631.[2] There is therefore no question but that in Delaware the duty of a father to support his child is a legal duty and not merely a moral obligation. Furthermore, in those states which deny to a child the right to sue directly for support in equity on grounds that the obligation is purely moral or that such suits tend to defeat domestic harmony, it is generally conceded that where a suit between husband and wife is not barred the mother can sue in her own name to collect for moneys laid out for

1. The Court of Common Pleas of Montgomery County, Pennsylvania, temporarily awarded custody of the infant to her mother on October 27, 1954.

2. A non-support statute directed against a deserting husband or father was adopted in 1887, Chap. 230, Vol. 18, *Laws of Delaware,* and the duty of both parents to support a neglected, dependent or delinquent child was recognized in § 13 of the Juvenile Court Act for Wilmington, adopted in 1911, Chapter 262, Vol. 26, *Laws of Delaware.* This latter section exists substantially unchanged as § 955 of *Title* 10, *Delaware Code,* see *infra.*

the child. It is also generally recognized in these states that merchants supplying necessaries to a child may collect at law from the father. In fact, the point of cleavage between the cases denying the child's right to sue in equity in his own name or by a next friend and those upholding such a right independently of statute would appear to be not on the question of the duty of a father to support a child but whether the child has a direct equitable remedy rather than an indirect legal remedy for obtaining such support, *Simonds v. Simonds*, 81 *U.S.App.D.C.* 50, 154 *F.2d* 326, 13 *A.L.R.2d* 1138 and *Annotation* at p. 1142.

If Chancery jurisdiction for this type of action existed at the time of the adoption of the Delaware Constitution of 1792 and unless later Delaware[3] constitutional and statutory provisions restrict such jurisdiction, *duPont v. duPont*, 32 *Del.Ch.* 56, 79 *A.2d* 680, affirmed 32 *Del.Ch.* 413, 85 *A.2d* 724, I conclude that this Court should furnish a remedy for a needy child seeking support from a father, *Wedderburn v. Wedderburn*, 46 *App.D.C.* 149, *Schneider v. Schneider*, 78 *U.S. App.D.C.* 383, 141 *F.2d* 542, *Simonds v. Simonds, supra, McClaugherty v. McClaugherty*, 180 *Va.* 51, 21 *S.E.2d* 761 and other cases of like import cited in *Annotation* in 13 *A.L.R.2d* at p. 1142 *et seq.* Obviously a common law suit unaided by a continuing support order would entail subsequent suits in order to maintain support payments and would otherwise make for a circuitous and imperfect route to the objective of adequate support. However, the first question to be answered remains, did the Court of Chancery at any time have jurisdiction to decree support for a minor?

As in the case of *duPont v. duPont, supra,* which was the suit of a wife for separate maintenance, the present case is evidently the first of its type to be filed in this Court. It was decided in the *duPont* case that since the general equity powers of the Court of Chancery of Delaware are those of the High Court of Chancery of Great Britain prior to the separation of the American colonies from Britain and because the colonies did not establish Ecclesiastical Courts for wives seeking support, a Court of Equity would have furnished a forum for

3. See Secs. 10 and 17, Article IV, *Constitution of Delaware,* Vol. I, *Delaware Code Annotated* as construed in duPont v. duPont, infra.

such suits in Delaware under the maxim that equity will suffer no right to be without a remedy. The majority opinion further held that this original jurisdiction of Chancery could not be altered or repealed by the Legislature under Sec. 17 of Article IV of the *Delaware Constitution of 1897*. Accordingly, the majority of the Court concluded that the Delaware Court of Chancery had jurisdiction to hear such a non-support case since a sufficient remedy had not been created in another court as permitted by *Sec. 342, Title 10, Delaware Code.*

Turning to the English law on the maintenance of children we find in the case of *Butler v. Butler* (1743) 3 *Atk.* 58, 26 *English Reprint* 836, that the Lord Chancellor stated that unless the parent was totally incapable, the law of the land and of nature required a father to maintain his child. This statement appears at first blush to be at odds with the support principles set forth in *Halsbury's Laws of England,* second edition, vol. 17, at sec. 1392 where it is bluntly stated that the obligation of a father or mother to maintain a child arises only under the poor law unless the neglect would bring the case within the criminal law. Halsbury concedes, however, that Chancery had refused to allow maintenance out of property of infants where the father is in a position to maintain them, citing *Fawkner v. Watts* (1741) 1 *Atk.* 406, 26 *English Reprint* 257, *Butler v. Butler, supra,* and *Wellesley v. The Duke of Beaufort* (1826), 2 *Russ* 1, 38 *English Reprint* 236. Also in England the so-called moral duty of a father to support his children furnished consideration for a suit to recover for the supplying of necessaries even where the father was a stepfather, who had merely placed himself in *loco parentis, Stone v. Carr* (1799) 3 *Esp.* 1, 170 *English Reprint* 517.

There appears, however, to have been no support practice in Chancery in Great Britain in the form of orders for periodic payments for a child's benefit unless there was property of the infant in the custody of the court. Evidently the poor were left to the mercy of the poor law and because of the entailment of property and other devices designed to perpetuate the English class system, neglected children of wealthy parents normally came into Chancery with [4] property of their

4. It was not necessary, however, for jurisdiction that the infant have property, *In re Fynn*, 2 *De G. & Sm.* 457 (1848), 64 *English Reprint* 205.

own, and the Lord Chancellor then did equity, where necessary enforcing his orders by contempt proceedings against parents and guardians. See *Huke v. Huke,* 44 *Mo.App.* 308, 309. By the same token it is clear that the High Court of Chancery of Great Britain as the inheritor of certain prerogatives of the King has always been considered the repository of the King's historic powers as *parens patriae* and particularly charged with the duty of protecting infants, the mentally ill and others under disability. In the case of *Wellesley v. The Duke of Beaufort, supra,* a bitter dispute over the custody of children, it was stated by the Lord Chancellor, Eldon, that there was jurisdiction in the Court of Chancery to provide support for a minor and that such power should be exercised liberally even though he recognized that Chancery usually declined to exercise such jurisdiction unless the minor had property, the Court stating:

> "If any one will turn his mind attentively to the subject, he must see that this Court has not the means of acting, except where it has property to act upon. It is not, however, from any want of jurisdiction that it does not act, but from a want of means to exercise its jurisdiction; because the Court cannot take on itself the maintenance of all the children in the kingdom. It can exercise this jurisdiction usefully and practically, only where it has the means of doing so; that is to say, by its having the means of applying property for the use and maintenance of the infants."

The case of *Eyre v. The Countess of Shaftsbury* (1722) 2 *P.Wms.* 103, 24 *English Reprint* 659, also recognizes the broad jurisdiction of the High Court of Chancery over the affairs of infants, that such jurisdiction is original, and that no act of Parliament had diminished it, the act that abolished the Court of Wards having returned the jurisdiction of wardships to the Court of Chancery.[5]

Accordingly, despite statements to the contrary in those American cases which hold that an infant cannot sue for support in equity, see *Annotation* 13 *A.L.R.2d* p. 1142, it would appear not only that the

5. English Chancery jurisdiction encompassed a broader field than that originally alloted to Delaware Courts of Equity. An Orphans' Court existed in Delaware as early as 1683, *Wooley on Delaware Practice,* Vol. I, p. 47.

duty of a father to support his child was recognized in England, but that no less an authority than Lord Eldon [6] conceded that there was jurisdiction in the High Court of Chancery of Great Britain recognized for "centuries past" to order that an infant be supported by his father though he declined to exercise this jurisdiction where the custody of a child was to be taken away from the father.

Having found that a minor's action for maintenance was within the jurisdiction of the High Court of Chancery of Great Britain, such jurisdiction is subject to curtailment only under the terms of *Sec. 342, Title* 10 *Delaware Code.*

The second question to be answered is therefore whether or not plaintiffs have a sufficient remedy by statute before any other court of this state.

It is alleged in the complaint that Mrs. Cohen and the defendant were divorced in this county in 1950. *Sec.* 1510 of *Title* 13, *Delaware Code,* provides that the Superior Court in any cause of divorce may make such order for the "* * * care and maintenance of the children * * * as is just and reasonable; and the Court may, from time to time, revise and change such order as occasion requires." Assuming that the Legislature in enacting the Family Court Act did not alter the jurisdiction of the Superior Court to make orders for the maintenance of children in divorce and annulment cases and that the Superior Court could have ordered maintenance for the infant Diane, it appears in the case at bar that no application for the maintenance of Diane was made in Superior Court such having been temporarily provided for by agreement of her parents prior to their divorce in April 1950. This Court has held that it has jurisdiction in this cause which is subject to curtailment only as provided for in *Sec.* 342, *Title* 10, *Delaware Code.* As the concurrent jurisdiction of the Superior Court in the matter of support of children, limited as

6. In *Wellesley v. The Duke of Beaufort, supra,* at page 246 of Vol. 38, *English Reprint,* Lord Eldon states that if the father has the means to support his children (be their fortunes what they may) Chancery will say "You shall provide for them out of your own means and not encroach upon the property of the children." He found no precedent, however, for ordering a father to support his children, where the father was not given custody of them.

it is to cases of divorce and annulment, is merely permissive and the statute in question did not by its terms restrict equitable jurisdiction, I conclude that this Court was not divested of its jurisdiction in causes of this type by *Section* 1510, *Title* 13, *Delaware Code*. See *Glanding v. Industrial Trust Co.,* 28 *Del.Ch.* 499, 45 *A.2d* 553, *Theisen v. Hoey,* 29 *Del.Ch.* 365, 51 *A.2d* 61. The Superior Court not having exercised jurisdiction in the matter of Diane's support, this Court will proceed to final disposition of the matter, *Flaherty v. Industrial Trust Co.,* 20 *Del.Ch.* 403, 178 *A.* 586; *State v. Redmile,* 5 *Pennewill* 520, 63 *A.* 575; *duPont v. duPont, 7 Terry* 280, 83 *A.2d* 105, unless some other statute divests this Court of such jurisdiction.

*Section* 951 of *Title* 10, *Delaware Code,* does purport to give the Family Court of New Castle County exclusive original jurisdiction in all proceedings in New Castle County wherein any parent without lawful excuse, refuses to provide for the support of his or her children. Accordingly it must be decided whether or not a sufficient remedy is thereby established for a minor seeking support.

As pointed out by the Supreme Court of Delaware in *duPont v. duPont, supra,* the Legislature, in order to prevent the Chancellor from exercising a part of the general equity jurisdiction of the Court of Chancery, must do two things: (a) express an intention to confer that part of equity jurisdiction exclusively upon another court and (b) create in that court remedies equivalent to those available in the Court of Chancery.

*Sec.* 502(a) of *Title* 13, *Delaware Code,* a quasi-criminal section, which was found inadequate for a neglected wife is similarly inadequate for a neglected child when measured against the remedies available for such a person in Chancery. In the Family Court an action for the support and maintenance of a child is brought on information in the name of the State, is quasi-criminal in nature and within the control of the Attorney General. Under the statute a child or his representative may not insist on private counsel or force the Attorney General to appeal from an adverse decision. In contrast, in Chancery, a child through his next friend and counsel is in control of a suit, may expect the defendant to pay his expenses in the event of success, may

have the defendant cited for contempt in the event of default, may employ equitable powers of seizure of defendant's property to satisfy a decree, and in the event of an adverse decree, may appeal.

Counsel for defendant maintains that because *Sec.* 955 of *Title* 10, *Delaware Code,* permits the Family Court itself in any case where the Court finds a child neglected, dependent or delinquent in the same or subsequent proceedings, to enter an order according to equity in the premises and to enforce such order "in any way in which a court of equity may enforce its order or decree", this Court of Equity should not assume jurisdiction.

This section does not in my opinion provide procedures in the Family Court equivalent to those available in this Court. The authority given to the Family Court *sua sponte* to inquire into the ability of parents to support a child and to enter a decree "according to equity" appears to be insofar as support is concerned merely a recognition of the duty of a mother to support a child, if she has the means, where the father is unable to provide such support. See *Sec.* 702, *Title* 13, *Delaware Code.* While the power given by this section to enforce a support order "in any way in which a court of equity may enforce its order or decree" enlarges the remedies contained in the quasi-criminal sanctions of the Family Court Act by perhaps authorizing an equitable contempt proceeding and the seizure of property of a defaulting parent, these remedies are to be exercised by the Court itself. Furthermore, the other procedures available in Chancery noted above relating to representation, payment of expenses, general control of the litigation and the right of appeal are absent in support cases before the Family Court. Accordingly plaintiffs do not have a "sufficient remedy" in another court, and the judges of this Court are not prohibited by reason of *Sec.* 342, *Title* 10, *Delaware Code,* from exercising the jurisdiction of the Court of Chancery to award support for the maintenance of a minor.

Were it an independent claim, this Court would not have jurisdiction to hear Mrs. Cohen's claim for moneys spent by her for the maintenance of her child since January 1953 but where a court of equity has jurisdiction of one branch of a case, it will, in order to avoid a multiplicity of suits, assume jurisdiction of the entire subject

under litigation, *Virden v. Board of Pilot Commissioners,* 8 *Del.Ch.* 1, 67 *A.* 975, *duPont v. duPont, Del.Ch.* 1953, 98 *A.2d* 493. Defendant's motion to dismiss the complaint of Mrs. Cohen, as an individual and as next friend of Diane Lea Markel, on jurisdictional grounds and defendant's motion to dismiss on the grounds that the complaint of Mrs. Cohen as an individual fails to state a claim upon which relief can be granted are denied.

Order on notice.