Elaine BENVENUTO, Appellant,

v.

John A. BENVENUTO, Jr., Appellee.

John A. BENVENUTO, Jr., Appellant,

v.

Elaine BENVENUTO, Appellee.

Nos. 12318, 12390.

District of Columbia Court of Appeals.

Argued March 14, 1978.

Decided June 30, 1978.

Armin U. Kuder, Washington, D. C., for Elaine Benvenuto. Thomas C. Sullivan, Washington, D. C., also entered an appearance.

Hal Witt, Washington, D. C., for John A. Benvenuto, Jr.

Before KERN, NEBEKER and HARRIS, Associate Judges.

KERN, Associate Judge.

This case presents two issues: whether the trial court, in the process of granting a divorce to the parties, abused its discretion (1) in awarding the jointly-titled marital home *entirely* to the husband, and (2) in ordering the husband to pay $650 per month as child support, allegedly without considering adequately the needs of the child, the husband's capacity to pay, and the wife's ability to contribute to the child's expenses. We affirm the determinations of the trial court.

The contested property was located at 3301 Garfield Street, N.W., and had been acquired by the couple as tenants by the entirety in 1969.[1] Neither party disputes the trial court's findings that the money for the purchase price, settlement costs, and some substantial improvements to the property was secured from the husband's family; that he alone signed notes assuring repayment of the money; and that no interest payments have been made on these loans since 1969. Nevertheless, the wife contends that because the property was jointly titled, and also because she worked during the marriage and contributed her earnings to the family, the trial court abused its discretion in "divesting" her of title.

A judge is granted broad discretion in adjusting property rights of the parties incident to a divorce. *See Stanley v. Stanley,* D.C.App., 234 A.2d 810, 811–12 (1967); *Hales v. Hales,* D.C.App., 207 A.2d 657, 659 (1965); *Lundregan v. Lundregan,* D.C.Mun.App., 176 A.2d 790, 792 (1962). Although there is a presumption that parties hold equal shares in tenancies by the entirety, the applicable statute explicitly *dissolves* such tenancies upon divorce and grants to the trial court the power to "award the property to the one lawfully entitled thereto or apportion it in such a manner as seems equitable, just, and reasonable." D.C.Code 1973, § 16–910. *See Travis v. Benson,* D.C.App., 360 A.2d 506, 509–10 (1976); *Mumma v. Mumma,* D.C. App., 280 A.2d 73, 75 (1971).[2] In determining the rights of the parties in compliance with these guidelines, it is axiomatic that "[n]o hard and fast rule can be laid down. Each case must be decided on its particular circumstances . . . ." *Lundregan v. Lundregan, supra* at 792. *See Hales v. Hales, supra* at 659. Thus, so long as the trial court considers all relevant factors, its conclusions will not be disturbed on appeal. *See Campbell v. Campbell,* D.C.App., 353 A.2d 276, 279 (1976); *King v. King,* D.C. App., 286 A.2d 234, 237 (1972).

After evaluating the circumstances of the instant case, the court granted title to the husband for the following reasons, among others:

It was from Dr. Benvenuto's mother that the monies came to buy and improve this house. He, solely, has undertaken the formalized commitment to repay some of these loans: and the fact that he has not yet done so voluntarily or been called upon to so pay these long-standing obligations does not, in any way, negate his continuing responsibility in this regard. It was primarily Dr. Benvenuto's own physical labors which had produced

---

1. The parties have voluntarily agreed to the disposition of a second piece of real estate. Mrs. Benvenuto agreed to execute a quit-claim deed in her husband's favor for her interest in certain undeveloped property in West Virginia, which had been a joint gift to them from Mr. Benvenuto's mother, in return for which Mr. Benvenuto would pay her $3,000.

2. Moreover, even if this were considered an action for partition of the property under D.C. Code 1973, § 16–2901, the presumption of equal ownership is rebuttable. *See Sebold v. Sebold,* 143 U.S.App.D.C. 406, 414, 444 F.2d 864, 872 (1971), *citing Jezo v. Jezo,* 23 Wis.2d 399, 400, 127 N.W.2d 246, 250 (1964).

the existing substantial improvements on the home. The incomes of both parties served not to purchase or enhance the real property but to maintain their generous standard of living for other needs and interests.

The judge concluded by quoting *Lundregan v. Lundregan, supra,* to the effect that the "court is 'not convinced that [Mrs. Benvenuto] *has acquired any equitable or legal interest therein* which would entitle her' to a portion of said real property." (Emphasis added.)

■ Despite the explicitness of these findings, the wife argues that the judge overlooked her contribution to the property and made the disparate financial contribution of the husband's family the controlling factor in the decision. In fact, however, the court expressly acknowledged that "financial contribution is not the sole criterion in resolving entitlement" to jointly held property, *citing Campbell v. Campbell, supra,* and *King v. King, supra,* and the transcript reveals that both financial and nonfinancial factors were considered. The court weighed the efforts each party had expended on the property and noted that the husband had provided "the bulk of the physical and managerial labors on these premises." Although the court recognized that the parties had pooled their incomes to meet family expenses, it correctly emphasized the central reality in this case, namely, that *neither* husband *nor* wife had made a significant financial contribution to purchase or improve the property, and *only* the husband was obligated to repay the loans which had made possible the purchase and improvements. The mere listing of the parties as joint tenants therefore was not dispositive on the issue of legal entitlement following a divorce. Since the wife was in no way responsible for the loans, the intention of the parties in listing themselves originally as tenants by the entirety would seem to be "more consistent with the characterization . . . that [the husband and his family]

desired to assure [the wife's] right of survivorship during the continuance of the marriage [rather] than [to] make an absolute disposition to [her] of a one-half interest in the home." *Chamberlain v. Chamberlain,* D.C.App., 287 A.2d 530, 532, *cert. denied,* 409 U.S. 892, 93 S.Ct. 132, 34 L.Ed.2d 149 (1972).

We are satisfied that in this case the court properly considered all relevant factors. The evidence supports the trial court's conclusions that the husband was lawfully entitled to the property, and on these facts we uphold the award of the property entirely to the husband as within the discretion of the trial court. *Cf. Grasty v. Grasty,* D.C.App., 302 A.2d 218, 219 (1973).[3]

■ As to the second issue in this case, the husband contends that the trial court abused its discretion in ordering him to pay $650 per month to the mother as child support because it did not adequately assess the needs of the child, the husband's capacity to pay, and the wife's ability to contribute to the child's expenses. It is without dispute that the father has an absolute legal obligation to support his child. *Truslow v. Truslow,* D.C.App., 212 A.2d 763, 765 (1965); *Blumenthal v. Blumenthal,* D.C. Mun.App., 155 A.2d 525, 526–27 (1959); *Schneider v. Schneider,* 78 U.S.App.D.C. 383, 385, 141 F.2d 542, 544 (1944). Although there is no precise formula for arriving at an equitable figure for the amount of the husband's contribution to the child's expenses, the correct approach is for the court to balance the many factors surrounding the pecuniary situation of the family and the reasonable needs of the child. *See Smith v. Smith,* D.C.App., 344 A.2d 221, 223 (1975), *citing Hamilton v. Hamilton,* D.C. App., 247 A.2d 421, 422 (1968). If the judge has expressly weighed the appropriate factors, he may exercise broad discretion as to the level of support ordered and, once the child support order is entered, it will not be disturbed on appeal except for an abuse of

---

**3.** *Cf. Quarles v. Quarles,* D.C.App., 353 A.2d 285, 287 (1976) (award is not "plainly wrong or without evidence to support" it, *citing* D.C.

Code 1973, § 17–305(a); Super.Ct.Dom.Rel.R. 52(a), 53(e)(2)).

discretion. *Smith v. Smith, supra* at 223; *Hamilton v. Hamilton, supra* at 422; *Dawson v. Dawson,* D.C.App., 193 A.2d 70 (1963).

On cross-appeal, the husband contends that the trial court abused its discretion by failing correctly to balance the relevant factors. Specifically, he argues (1) that the trial court accepted without analysis the wife's allegedly inaccurate statement of projected monthly expenses for the support of the child; (2) that the court failed to consider adequately that the husband was experiencing increasing financial difficulties; and (3) that the court failed to give proper weight to the substantial salary earned by the wife. We address these contentions *seriatim.*

The husband argues that the court should not have accepted the wife's statement of estimated monthly expenses for the support of the child because, he alleges, her estimates were patently excessive. The husband's objection essentially focuses on a single item in the wife's projected expenses in support of the child: *i.e.,* an allocation for salary and apportioned food and rent for a full-time live-in housekeeper. In spite of the fact that the wife was working full-time, he argues that a live-in housekeeper was a "sheer extravagance" for a ten-year-old child who is attending school through most of the day. Although the husband recognizes that the trial court has considerable discretion in determining an award of child support, he contends that the level of support ordered by the court should be overturned because the judge failed to make a specific finding that a live-in housekeeper was a genuine need of this child.

We have held that a trial court does abuse its discretion if it fails to make "*any* findings . . . with regard to the children's needs." *Wood v. Wood,* D.C.App., 360 A.2d 488, 491 (1976) (emphasis added). Such findings are of course necessary in order for the reviewing court to know how conflicting claims were resolved or whether they were in fact considered by the trial court. *Id. See Smith v. Smith, supra* at 223–24; *Grasty v. Grasty, supra* at 220.

Thus, the critical question is whether the record contains sufficient findings as to the ultimate controverted issues in the case for this court to be assured that the judge considered the relevant matters and for this court to review the judge's conclusions.

In the instant case, the judge specifically cited the wife's projected *need* for a three bedroom apartment and a housekeeper; the court also found that Mr. Benvenuto "has indulged his own needs and desires and has *similarly accustomed his child to a good station in life with private schools and generous recreational pursuits.*" (Emphasis added.) Although greater specificity would have been desirable, it is not necessary here, for these findings, taken together, enable us to conclude that the trial court accepted the wife's assessment that the needs of the child included a live-in housekeeper. The order challenged by the husband therefore does contain sufficient findings to enable this court to review the issue of the need for the housekeeper.

■ We further conclude that the evidence in this case supported this result. As the husband himself conceded in his brief, "[i]t is true that [the] parties did employ a housekeeper at least a portion of the time during which they lived together, and a housekeeper might, in fact, have been an accoutrement of the life style to which the parties had become accustomed when they were living together." One factor which may be considered in determining the needs of the child is the standard of living which the child would have enjoyed had the marriage not been dissolved. *See Schneider v. Schneider, supra,* 78 U.S.App.D.C. at 385, 141 F.2d at 544, *Uniform Marriage and Divorce Act,* 9 U.L.A. § 309(3). Therefore, we hold that the trial court did not abuse its discretion in accepting the wife's statement of estimated monthly expenses for the support of the child which included the allocated cost of a housekeeper.

The husband further argues that the court did not adequately consider his ability to pay in light of a record which allegedly reveals that he was experiencing increasing financial difficulties and had accumulated a

heavy burden of debt. In fact, it appears that the trial court considered the husband's ability to pay and disagreed with him as to what the evidence adduced shows.

We note that the court explicitly indicated that it could "enforce a father's obligation to support a minor child 'only commensurate with his financial ability to pay,'" *citing Hoffman v. Hoffman,* D.C. App., 210 A.2d 549, 550 (1965); *Russell v. Russell,* D.C.App., 202 A.2d 921, 922 (1964); *Payton v. Payton,* D.C.App., 187 A.2d 899, 900 (1963). In compliance with the case law in this jurisdiction, the judge then made express findings as to the husband's net income.[4] After considering the circumstances, the court concluded the husband could shoulder a significant sum in child support:

> Dr. Benvenuto is a professional man, with a substantial income for his own needs only, has separate real and personal property and has spent at a level outstretching his ability to pay. He has indulged his own needs and desires and has similarly accustomed his child to a good station in life with private schools and generous recreational pursuits. *His income, which has increased since the separation,* can readily absorb some of these expensive needs. (Emphasis added.)

On the record before us, we cannot find the court's conclusion to have been an abuse of discretion. The examples the husband cites to us in support of his argument concerning financial difficulties all occurred during late 1974 when he was changing jobs and moving to Washington, D.C. to New York; by the time of the trial in March of 1977 his new job had commenced and his salary had, indeed, increased.[5] Although the husband's financial statement reveals monthly expenses which exceed his monthly net income, his financial statement appears not to reflect accurately his actual liabilities. A large portion of the husband's alleged "debt" involved financial obligations to his family,[6] and as trial testimony revealed and the court noted, no payments on these loans had been made since 1969. Thus, it is not clear that these loans constituted actual financial obligations at all.[7]

Even assuming *arguendo* that the husband will be required eventually to pay these debts, that would still not be proof that the level of child support payments was excessive. The court noted that Mr. Benvenuto consistently "has indulged his own needs," and the record abundantly supports this conclusion. The courts properly show no patience toward a person who seeks to circumvent family obligations without first decreasing his own expenditures. *See Hamilton v. Hamilton, supra* at 424; *Grand v. Grand,* D.C.Mun.App., 163 A.2d 556, 557 (1960). We hold that the trial court adequately assessed the husband's ability to pay, particularly in light of the fact that he has claimed "creditors" who appear willing to forego payment on a sizeable portion of his alleged debts. *See Grasty v. Grasty, supra* at 221 n.5, *citing Green v. Green,* D.C.App., 217 A.2d 658, 659 (1966). On the record before us, we do not find the award of $650 per month to have been out of proportion to the husband's ability to pay. *See Russell v. Russell, supra*

---

4. The court recognized that in determining the husband's capacity to pay, it was required to consider his "approximate net income," *citing Wood v. Wood, supra* at 490–91 (1976), and the judge then found that "Dr. Benvenuto earns $45,000 gross per year and has a net monthly income from all sources [including stock dividends] of $1,965.04."

5. The parties separated in July 1974. In contrast to Mr. Benvenuto's 1977 gross salary of $45,000, the record indicates that the combined gross salaries of Mr. and Mrs. Benvenuto in 1973 had been only $36,000 and their combined salaries for the first half of 1974 were $26,000.

6. The husband's financial statement listed financial obligations totalling $154,741.97. Of this amount, however, at least $102,959 was owed to family members. Thus, non-family obligations totalled only $51,782.97.

7. The husband's financial statement showed total assets of $165,177.00 and total liabilities of $154,741.97, for a net worth of over $10,000. If his obligations to his family were removed, however, his financial statement would reflect total assets of $165,177.00 against total liabilities of $51,782.97, for a net worth of $113,-394.03.

(upholding an award of $20 per week for the support of a child although the father earned only about $62 per week); *Dawson v. Dawson, supra* at 70.[8]

 The husband's final contention is that the trial court failed to give adequate weight to the substantial salary earned by the wife. The court found Mrs. Benvenuto's gross annual income to be $28,000, and indicated that she "will certainly be obligated to contribute a part to the support of her child." The husband complains that the award resulted in a "substantial disparity in the percentage of monthly income allocated by the parties for the support of [the daughter]." Although there is indeed some disparity, we do not find it to be substantial. The $650 per month support payment is approximately 33% of the husband's monthly net income of $1965. Even according to the husband's own calculations, however, the wife under the current support order is obligated to contribute 28% of her net income to the expenses of the child. The gravamen of the husband's complaint here would seem to be that the trial court should have apportioned the child's expenses so that they *directly* reflected the net income available to each of the parties. Such mathematical precision in an award has never been demanded, and to impose it now would require the reversal of a long line of cases which have stated that the trial court may exercise broad discretion in awarding child support. *See, e.g., Smith v. Smith, supra* at 223; *Hamilton v. Hamilton, supra* at 422; *Dawson v. Dawson, supra* at 70. Therefore, we decline the invitation to impose such a mechanical formula in this case. Accordingly, the court's order that the husband pay $650 per month in child support is hereby

*Affirmed.*[9]

8. We note that at the time of the separation the parties had agreed informally upon support payments by the husband to the wife of $600 per month. Although this sum included certain components (*e.g.*, payment of taxes on the marital home) which are not relevant to a child support order, and although this was not the sort of binding agreement between the parties which this court considered in *Lananhan v. Nevius,* D.C.App., 317 A.2d 521 (1974), the

$600 figure does provide at least some indication of what Mr. Benvenuto considered himself able to pay at the time of the separation.

9. The trial court does, of course, retain jurisdiction to consider a motion by either party to modify the child support order due to materially changed circumstances. *Wood v. Wood, supra* at 490.