Mary Ellen HACKES, Appellant,

v.

Peter F. HACKES, Appellee.

No. 80–87.

District of Columbia Court of Appeals.

Argued March 3, 1982.

Decided June 17, 1982.

Rolland G. Lamensdorf, Washington, D. C., for appellant.

Elizabeth Guhring, Washington, D. C., with whom Pamela Forbes Dulles, Washington, D. C., was on briefs, for appellee.

Before KELLY, NEBEKER and MACK, Associate Judges.

KELLY, Associate Judge:

In this divorce action there are appeals from two orders of the trial court. The first, issued on December 18, 1979, granted appellee, *inter alia*, an absolute divorce, and in accordance with the parties' recommendation, ordered them to equitably divide the household contents and their personal effects without the court's intervention.

After briefs appealing portions of that order were filed, appellee moved in this court for an order permitting him to enter 5045 Klingle Street, N.W., the marital home of the parties, for the purpose of taking an inventory and appraisal of its contents. This request was pursuant to the trial court's order acknowledging an agreement between the parties that they would try to divide the personal property by themselves. In response to appellee's motion, we remanded, ordering the trial court to handle the distribution. On July 24, 1981, after further hearings, the trial court issued an order dividing the personal property of the parties. This is the second order on appeal.

The issues on appeal from the first order are whether the trial court erred in (1) determining that D.C.Code 1981, § 16-910(b) governed the distribution of the real

and personal property located at 5045 Klingle Street; (2) failing to include or consider appellee's pension and retirement benefits in distributing the property; (3) failing to dismiss appellee's counterclaim and supplemental counterclaim due to his invocation of the Fifth Amendment privilege against self-incrimination on the issue of adultery; and (4) failing to hold appellee in contempt of court for non-compliance with the court's *pendente lite* support order. Those on appeal of the second order are whether the court erred in (1) interpreting this court's remand order, (2) determining that the household furniture and furnishings were subject to distribution by the trial court, and (3) distributing the contents of 5045 Klingle Street in accordance with D.C.Code 1981, § 16–910(b). We consider the issues *seriatim*, and affirm.

I

■ Appellant posited at trial that the house at 5045 Klingle Street was subject to distribution by the court under D.C.Code 1981, § 16–910(b), which provides for the distribution of all "other property." On appeal, she contends that the house was not subject to distribution by the trial court because it was her sole and separate property either under a post-nuptial agreement between herself and the appellee or by gift from the appellee. Under D.C.Code 1981, § 16–910, sole and separate property acquired during the marriage by gift must be

assigned to the donee; property acquired by a post-nuptial agreement passes under the terms of the agreement. Neither is subject to discretionary distribution by the trial court.[1]

Parties may not assert one theory at trial and another theory on appeal. *Miller v. Avirom*, 127 U.S.App.D.C. 367, 384 F.2d 319 (1967). Accordingly, appellant is estopped from reversing her contentions and arguing on appeal of the December 18, 1979 order that the house was not subject to distribution by the trial court under D.C.Code 1981, § 16–910(b). We note that the trial court did not distribute the contents of the house under its first order pursuant to the parties' representations that they would try to divide their personal property themselves. The effect of the alleged post-nuptial agreement on the house contents is discussed *infra*.[2]

■ Appellant's second claim of error, that the trial court failed to include or consider appellee's retirement and pension benefits in distributing the property, must fail because appellant did not request the trial court to divide these benefits. The court noted this fact in its supplemental findings of fact, finding that "no request was made at trial for a division of defendant's pension rights. Plaintiff's attorney urged at trial only that the Court consider its existence as one factor to be taken into

---

1. D.C.Code 1981, § 16–910 provides:

    Upon the entry of a final decree of annulment or divorce in the absence of a valid ante-nuptial or post-nuptial agreement or a decree of legal separation disposing of the property of the spouses, the court shall:

    (a) assign to each party his or her sole and separate property acquired prior to the marriage, and his or her sole and separate property acquired during the marriage by gift, bequest, devise, or descent, and any increase thereof, or property acquired in exchange therefor; and

    (b) distribute all other property accumulated during the marriage, regardless of whether title is held individually or by the parties in a form of joint tenancy or tenancy by the entireties, in a manner that is equitable, just and reasonable, after considering all relevant factors including, but not limited to: the duration of the marriage, any prior marriage of

either party, the age, health, occupation, amount and sources of income, vocational skills, employability, assets, debts, and needs of each of the parties, provisions for the custody of minor children, whether the distribution is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of assets and income. The court shall also consider each party's contribution to the acquisition, preservation, appreciation, dissipation or depreciation in value of the assets subject to distribution under this subsection, and each party's contribution as a homemaker or to the family unit.

2. We note that even had appellant properly raised the issue, the house would not be apportioned to her as her sole and separate property by reason of a gift from appellee under *Hemily v. Hemily*, D.C.App., 403 A.2d 1139 (1979).

account in ruling upon the disposition to be made of the real property acquired by the parties during the marriage."[3] Although *appellee's* counterclaim requested a division of the "personal property accumulated by the parties during their marriage," this request was not specific enough to put the trial court on notice that appellant wanted a distribution of appellee's retirement and pension benefits. This conclusion is even more compelling in light of the parties' representation to the court that they would divide their personal property between themselves without the court's aid.

Despite appellant's contentions to the contrary, we also conclude that the trial court considered all of the factors enumerated in D.C.Code 1981, § 16–910(b), including appellant's poor health and lack of substantial employment experience, and both parties' future earning power. The court acted within its discretion and made an equitable, just and reasonable distribution of the marital property.

■ Third, appellant asserts that appellee's counterclaim and supplemental counterclaim should not have been considered by the trial court because appellee invoked the Fifth Amendment in answer to questions (in his deposition and at trial) concerning his alleged adultery. Because adultery constitutes criminal conduct in the District,[4] it was proper for appellee to invoke his privilege in response to questions on that topic. *Sanders v. Sanders,* 105 Wash.D.L.Rep. 943 (May 31, 1977); *see Mahne v. Mahne,* 66 N.J. 53, 55, 328 A.2d 225, 226 (1974). However, when a civil litigant invokes the Fifth Amendment to prevent discovery, he is subject to non-criminal sanctions. *See id.* at 56, 328 A.2d at 226; *Levin v. Levin,* 129 N.J.Super. 142, 322 A.2d 486 (1974). The trial court has a broad choice of sanctions to impose when dealing with the good faith exercise of privilege in civil litigation. *Mahne v. Mahne, supra,* 66 N.J. at 61, 328 A.2d at 229.

■ In sanctioning invocation of the privilege against self-incrimination, the trial court strives to strike a proper balance between the public and private interests in broad discovery, while preserving the purpose of the privilege, *id.,* shielding witnesses from incriminating effects of their testimony. *Id.* at 58, 328 A.2d at 227. When a plaintiff invokes the privilege, he risks having his suit dismissed. *Id. See Sanders v. Sanders, supra.* This harsh penalty is designed to prevent a plaintiff from bringing a defendant involuntarily into court and then undermining his defense or counterclaim. *Id. See Mahne v. Mahne, supra* at 59, 328 A.2d at 228. It is generally considered inequitable to put the defendant, an unwilling litigant, in the position of having to choose between, on the one hand, asserting the privilege and having his counterclaim dismissed or, on the other hand, waiving the privilege and maintaining his counterclaim. *See Sanders v. Sanders, supra; Mahne v. Mahne, supra* at 60, 328 A.2d 228. Thus, contrary to appellant's contention, a trial judge is not required to strike a defendant's affirmative counterclaim when he invokes the privilege, although lesser sanctions may be invoked. *Id.*

In *Mahne, supra,* the plaintiff alleged adultery, and the defendant counterclaimed asserting cruelty. When the defendant invoked the Fifth Amendment on the adultery claim, the court held that the sanction of striking the defendant's counterclaim was unwarranted since the alleged adultery had no bearing on the cruelty claim.[5] In the case at bar, appellee invoked the Fifth Amendment solely on questions concerning the issue of adultery raised in appellant's complaint. In his counterclaim, appellee requested a divorce on the ground of living separate and apart for more than one year and a division of property. As in *Mahne,*

---

3. The supplemental findings were made pursuant to this court's remand order.

4. D.C.Code 1981, § 22–301.

5. As of September 1, 1979, neither adultery nor fornication constitutes criminal conduct in New Jersey. "Thus, the rational of *Mahne* is no longer controlling" in New Jersey. *Simeone v. Simeone,* 172 N.J.Super. 120, 122, 410 A.2d 1197, 1198 (1979).

appellee's counterclaim had no bearing on the alleged adultery. We conclude that the trial court was within its discretion in declining to sanction the appellee for his invocation of the privilege.

Appellant's final contention on appeal of the divorce order is that the trial court erroneously refused to hold appellee in contempt of court for failure to obey an order requiring appellee to pay alimony *pendente lite* of $2,500 per month, real estate taxes on 5045 Klingle Street, N.W., and medical bills, costs, and insurance premiums for appellant. The parties stipulated that on the hearing date, October 15, 1979, appellee was $1,000 in arrears under the order and that appellee had not yet paid $904.87 in real estate taxes due on September 17, 1979.

■ Persons subject to a court order to pay alimony *pendente lite* may be held in contempt of court and are subject to attachment, garnishment and/or imprisonment for non-compliance. D.C.Code 1981, § 16–911. When a motion for contempt is filed, the movant must first prove non-compliance with the order. *Bolden v. Bolden*, D.C. App., 376 A.2d 430, 433 (1977). In the instant case, appellant satisfied that burden with the above stipulations. To imprison for contempt, the movant must also prove the alleged contemnor's ability to pay. *Id.* at 433, citing *Lundregan v. Lundregan*, 102 U.S.App.D.C. 259, 252 F.2d 823 (1958).

■ The alleged contemnor can avoid sanctions for noncompliance by a showing of inability to perform or substantial performance. *Id.* at 432. Here, appellee introduced evidence showing that his income fell because his employer required him to reduce the number of outside speaking engagements he could accept. He also proved that he had added expenses due to his daughter's wedding. This evidence tends to prove justification for noncompliance with the order. Moreover, appellee showed substantial compliance with the court order: He paid $289.65 in pharmacy bills for medical costs incurred by appellant and all of

her physicians' bills except one which he expected to be paid largely by insurance. Finally, he had paid all of the alimony *pendente lite* ordered to be paid, except for $1,000.

The trial court correctly considered appellee's diminished ability to pay at the time of the hearing. We conclude that it could properly find that appellee met his burden of showing justification or substantial compliance and that it was within its discretion in denying the contempt motion.[6]

## II

■ When the parties failed to agree as to the division of their personal property, this court remanded the case to the trial court "for the purpose of devising an equitable plan of property distribution." On the theory that this court's remand order covered both real and personal property, appellant contends that the trial court erred in not reviewing and revising the total property distribution plan. Appellant is wrong.

> Generally . . . an order will not be construed as going beyond the motion in pursuance of which the order is made[,] *Prouty v. Clayton County*, 264 N.W.2d 761 (Iowa 1978); *State v. Weger*, 211 N.W.2d 322 (Iowa 1973); 60 C.J.S. *Motions and Orders* § 64 at 110; 56 Am. Jur.2d *Motions, Rules and Orders* § 29 at 25, for a court is presumed not to intend to grant relief which was not demanded. *Attorney General v. Pomeroy, supra* [93 Utah 426, 443, 73 P.2d 1277, 1285 (1937)]. [*Harrigan v. Mason & Winograd, Inc.*, 397 A.2d 514, 516 (R.I.1979).]

The motion before this court related solely to the distribution of the contents of the Klingle Street property. Because no other relief was demanded, the household contents are the sole subject of this court's remand order; the order did not require the trial court to alter its distribution plan as to other property and did not require it to

---

6. "[C]ourts need not impose the contempt sanction for every violation." *Marshall v. Local Union No. 639, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Inc.*, 193 U.S.App.D.C. 143, 149, 593 F.2d 1297, 1303 (1979).

consider a division of appellee's pension rights. The trial court correctly determined that its sole duty on remand was to divide the contents of the Klingle Street property.

On remand, appellant asserted for the first time that the household furniture and furnishings were not subject to distribution by the trial court because of the existence of a valid post-nuptial agreement.[7] The agreement allegedly provided for appellee's transfer of title to life insurance policies and the Klingle Street property and its contents, for preparation of wills by both parties, and for the continued payment of taxes, mortgage and insurance by appellee. In return, appellant was to refrain from divorcing appellee and to burn documentary evidence in her possession of his alleged adultery.

D.C.Code 1981, § 16–910 provides in pertinent part, "... in the absence of a valid ... post-nuptial agreement ... the court shall: * * * (b) distribute all other property accumulated during the marriage ...." Thus, if a valid post-nuptial agreement existed, it would govern the distribution of the parties' personal property and the trial court would not have jurisdiction to divide it.

Settlement agreements are construed according to general principles of contract law; an offer, acceptance, and consideration are necessary for their validity. *Bullard v. Curry-Cloonan*, D.C.App., 367 A.2d 127 (1976); *Rommel v. West American Insurance Co.*, D.C.Mun.App., 158 A.2d 683, 685 (1960). The trial court found that appellee did not accept appellant's offer to enter into a post-nuptial property settlement agreement. The scope of review of factual issues in a bench trial is limited to whether the court's judgment is plainly wrong or without evidence to support it. D.C.Code 1981, § 17–305. After review of the record, we conclude that the court's findings of fact are amply supported by the evidence. We agree that there was evidence that the plan was presented to appellee in the guise of estate planning: Appellant initially contacted an attorney, Murdaugh Madden, without appellee's knowledge. Mr. Madden told appellant that she could transfer the title to their house through their bank without his assistance. This was done. Then both parties met with Mr. Madden. His files revealed that they spoke to him about property transfers but failed to pursue the plan with him.[8] Appellee testified that he did not recall any post-nuptial agreement, and did not remember the burning of documentary evidence of his alleged adultery. This evidence supports the trial court's finding that there was no acceptance of the offer and that consequently no post-nuptial agreement ever existed.[9]

7. Contrary to the opinion of the trial court, we conclude that this issue was first raised in the trial court. Thus, this issue is not an improper subject for review by this court under *Miller v. Avirom, supra.*

8. Murdaugh Madden and appellee testified that Mr. Madden was not involved in the transfer of titles to the insurance policies.

9. Even had a contract been found to exist, it would have been unenforceable under the Statute of Frauds because it required the transfer of real property, yet there was no writing signed by the party to be charged. The acts of part performance alleged by appellant are insufficient to except the purported contract from the Statute of Frauds because they do not constitute unequivocal evidence of the alleged agreement. *See Kaufmann v. Adalman*, 186 Md. 639, 651, 47 A.2d 755, 761 (1946); 73 Am.Jur.2d *Statute of Frauds* § 406, at 33 (1974).

The evidence indicated that appellee did in fact transfer the real property and insurance policies to appellant, and that wills were prepared but not executed. Appellee continued to pay the house mortgage and taxes, as well as insurance premiums until sometime in 1975, when the policies lapsed. None of this proves that an agreement existed or that if it did exist, that it provided for the transfer to appellant of all of the personal property in the home. These acts are not "inconsistent with any other reasonable theory or hypothesis than that the acts were pursuant to such contract." 73 Am. Jur.2d, *supra* at 33–34 (footnote omitted). Married persons may transfer title to real estate and insurance and prepare wills for estate planning or tax purposes. It is unremarkable that a husband who is the principal income earner in a family would make mortgage and insurance payments. Moreover, the trial court found that appellant considered the house as belonging to both parties. Accordingly, we

We consider, finally, whether the trial court made an equitable, just, and reasonable distribution of the household contents as required by D.C.Code 1981, § 16–910(b).[10] The total value of all of the appraised personal property was found to be $13,045, $4,911.86 of which was determined to belong solely to appellant, and was awarded to her in accordance with the provisions of D.C.Code 1981, § 16–910(a). Of the remaining $8,134.34 worth of property, the court awarded furnishings and effects worth $3,107.50 to appellee and furnishings and effects worth $5,026.50 to appellant. It noted that appellant had sold appellee's family heirloom silver service for $530 for her own use and that she is left with "a well furnished household without the need for replacement items," whereas appellee will be able to buy replacement items if he remains employed. The court awarded appellant a sterling silver flatware service valued at $1,992.37 because she had a sentimental attachment to it. It awarded appellee other items having a combined value of $950, which were acquired during the marriage with joint funds. In making the distribution, the trial court considered many factors including appellant's chronic ailments, her potential for earning income as an equestrian instructor, her contributions as a homemaker for many years, appellee's salary as a news correspondent and speaker, their mortgage and tax debts, the value of the house, the sentimental attachment of the respective parties to specific items, the value of the items, and the respective needs of the parties, including the amount and value of furnishings that each party currently had in his or her possession, the observation that appellee has acquired $2,000 in furnishings since the separation, the other dispositions made under the orders of the court, and the relative difficulty in finding replacement items.

We conclude that the court considered all of the relevant factors in making distribution of the household contents to the parties and, consequently, do not disturb its deci-

sion on appeal. *See Benvenuto v. Benvenuto,* D.C.App., 389 A.2d 795, 797 (1978).

*Affirmed.*

---

conclude that the actions of the parties are insufficient to except the case from the Statute of Frauds on the basis of part performance.

10.  *See* note 1 *supra.*