**Robert MOSLEY, Appellant,**

v.

**Doris MOSLEY, Appellee.**

**No. 90–1311.**

District of Columbia Court of Appeals.

Argued Dec. 18, 1991.
Decided Jan. 7, 1992.

David Fox, Washington, D.C., for appellant.

---

Doris O. Robinson–Mosley, pro se. Reginia L. Jackson, Washington, D.C., filed a brief, for appellee.

Before ROGERS, Chief Judge, KING, Associate Judge, and BELSON, Senior Judge.

ROGERS, Chief Judge:

Appellant Robert Mosley appeals from a judgment distributing marital property on the ground that the trial court abused its discretion by distributing a substantially greater portion of marital property to appellee, Doris Mosley. We hold that the trial judge, in concluding that the marital property should be divided with one-third to Mr. Mosley and two-thirds to Mrs. Mosley, erred by requiring, as part of the distribution, that appellant reimburse Mrs. Mosley for monies she spent on the parties' District of Columbia residential property since 1980 without first determining the value of such reimbursement. We, therefore, reverse and remand the case to the trial court for further proceedings.

## I.

Mr. and Mrs. Mosley were married on October 27, 1949, and had eight children. During their marriage, both parties contributed to the household by working. Mr. Mosley earned his living as a carpenter, while Mrs. Mosley, who made more money over the course of the marriage, worked primarily as a teacher and an employee of the federal government. However, the trial judge found that the parties did not contribute equally to the household in other respects. Although Mr. Mosley occasionally took the children on outings and did some cleaning, the judge found that Mrs. Mosley's daily contributions were much more substantial. She did considerable household work, including cooking, dish-washing, laundry, and cleaning, for her husband and eight children. By contrast, Mr. Mosley left home on at least two occasions and frequently spent nights out drinking which ultimately led to an alcoholism problem and incidents of violence toward his family. The judge also found that Mrs. Mosley's efforts were primarily responsible for the investments in property which were made during the marriage. The parties also lived apart during their marriage while appellee worked in Pennsylvania. Thereafter, Mr. Mosley filed for an absolute divorce on August 21, 1990.

The trial judge's determination of what constituted marital property is undisputed.[1] The judge awarded Mr. Mosley the vacant lots in Virginia valued at $6,500; 75% of the D.C. residential property ($64,129); and his pension and Social Security worth $8,782 per year. The judge distributed to Mrs. Mosley substantially more of the marital property because her contribution to the family unit was greater. Her share included the vacant lots in Bowie valued at $6,860; the Pennsylvania residential property valued at $89,100; her pension of $22,944 per year; the savings of $21,695; 25% of the D.C. residential property ($21,376); a credit for all monies spent on the D.C. property since 1980 on items such as utilities, taxes, major repairs and major appliances; and selected personal property.

## II.

■ Under D.C.Code § 16–910 (1989 Repl.), a trial judge must distribute marital property "in a manner that is equitable, just and reasonable, after consideration of all relevant factors...." Thus, a trial judge has broad discretion in distributing marital property, *Bowser v. Bowser*, 515 A.2d 1128, 1130 (D.C.1986); *Powell v. Powell*, 457 A.2d 391, 393 (D.C.1983); *Leftwich v. Leftwich*, 442 A.2d 139, 142 (D.C.1982),

1. The marital property found by the trial judges includes:
    1) vacant lots in Bowie, Maryland valued at $6,860;
    2) vacant lots in Virginia valued at $6,500;
    3) D.C. residential property valued at $85,505;
    4) Pennsylvania residential property valued at $89,100;
    5) Mr. Mosley's pension and Social Security worth $8,782 per year;
    6) Mrs. Mosley's pension of $22,944 per year; and
    7) savings of $21,695.

*Benvenuto v. Benvenuto*, 389 A.2d 795, 797 (D.C.1978), and "[s]o long as the trial court considers all relevant factors, its conclusions will not be disturbed on appeal." *Bowser v. Bowser, supra,* 515 A.2d at 1130 (citations omitted). The nonexclusive list of relevant factors include:

> the duration of the marriage, any prior marriage of either party, the age, health, occupation, amount and sources of income, vocational skills, employability, assets, debts, and needs of each of the parties, provisions for the custody of minor children, whether the distribution is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of assets and income. The court shall also consider each party's contribution to the aquisition, preservation, appreciation, dissipation or depreciation in value of the assets subject to distribution under this subsection, and each party's contribution as a homemaker or to the family unit.

D.C.Code § 16–910(b).

Contrary to appellant's contention, the record reflects that the trial judge considered all relevant factors in making her findings of fact and that the findings were not conclusory. Although the parties' marriage lasted more than forty years, the court has never held that a marriage of long duration necessarily makes a distribution substantially favoring one party either an abuse of discretion or an indication that the relevant factors under § 16–910(b) were not considered. The fact that a distribution "clearly favors [one party] ... does not [by itself] establish an abuse of discretion, since the issue is to be determined by an assessment of the totality of the circum-stances." *Murville v. Murville,* 433 A.2d 1106, 1110 (D.C.1981) (citing *Campbell v. Campbell,* 353 A.2d 276, 279 (D.C.1976)).

The trial judge acknowledged the marriage's long duration and the presumption that marital property should be distributed equally in such cases. Also, as Mr. Mosley admits in his brief, the trial judge considered the salary contributions of both parties, Mr. Mosley's construction on the District of Columbia and Pennsylvania homes, Mr. Mosley's contribution to the family unit, the age and poor health of both parties and Mrs. Mosley's greater financial security.[2] The only factor that Mr. Mosley claims was never addressed—"the possibility that Mrs. Mosley might return to work"—was addressed by the judge in her findings that "Mrs. Mosley, at least at this time, is not working at any other job and did not testify about contemplating doing so," but that, among other things, Mrs. Mosley's financial management skills would enable her to "increase her capital and possibly amass some future major assets."

Nevertheless, although the trial court has broad discretion, this court noted in *Bowser v. Bowser, supra,* that "the trial court's findings of fact, conclusions of law and judgment, taken together, must present an integrated, internally consistent and readily understood whole." 515 A.2d at 1130.[3] In *Bowser,* although the court determined that Mrs. Bowser's $25,000 down payment on the marital home "far outweighed" the contribution of Mr. Bowser, it awarded Mr. Bowser $10,000 of the equity without determining how much equity was in the house at the time of trial. *Id.*

**2.** Mr. Mosley contends that, since many of these factors support Mr. Mosley, the trial judge's distribution of a substantial share of marital property to Mrs. Mosley had no rational basis and its findings were conclusory. However, Mr. Mosley mischaracterizes the trial judge's findings and conclusions. The trial judge indicated that the larger distribution to Mrs. Mosley was based largely on her substantial contribution to the family unit. The fact that other factors may have favored Mr. Mosley does not mean that the totality of the all factors, including contributions to the family unit, could not overwhelmingly favor Mrs. Mosley.

**3.** Mr. Mosley's contends that various trial court findings are inconsistent with the testimony at trial. This is merely an attempt to relitigate the case on appeal. To the extent Mr. Mosley is trying to apply *Bowser,* he misapplies the standard. *Bowser* requires that the trial court's "findings of fact, conclusions of law and judgment, taken together, must present an ... *internally* consistent ... whole," *Bowser v. Bowser, supra,* 515 A.2d at 1130 (emphasis added), and not that the trial judge's judgment be consistent with every statement made by a witness at trial.

As the court noted on appeal, if the equity were only $25,000 as Mrs. Bowser had contended, the court's award would be inconsistent with its determination that her contribution "far outweighed" Mr. Bowser's. *Id.* In short, the trial judge's percent distribution between Mr. and Mrs. Bowser would fluctuate widely according to the equity in the home, which the trial judge did not determine before distributing the marital property. Therefore, the court in *Bowser* remanded the case to the trial court to redistribute the equity after first determining the amount of equity in the home at the time of trial. *Id.* at 1133.

The instant case is similar to *Bowser.* The property distribution required Mr. Mosley to reimburse Mrs. Mosley for "[a]ny payments she ha[d] made for taxes, for utilities, for major structural repairs and for major equipment replacement [on the D.C. residence since 1980]." However, while including such a provision in the distribution, the trial judge, while carefully considering the factors under § 16–910, did not determine the value of such reimbursement. The record contains no evidence indicating the value of such payments. As with the equity of the marital home in *Bowser,* the value of Mrs. Mosley's reimbursement will significantly affect the percent distribution to each party. Furthermore, the amount of Mrs. Mosley's payments may be so high as to make the trial judge's findings of fact and conclusions of law so internally inconsistent as to violate the principles enunciated in *Bowser v. Bowser, supra,* 515 A.2d at 1130.

The trial judge concluded with regard to the distribution of marital property:

> Thus, Mrs. Mosley will be getting, for the reasons I have spelled out, or at least have tried to spell out, 66% of the property and her pension gives her current

income which is approximately twice that which is being received by Mr. Mosley.

> Mr. Mosley will receive obviously 33% of the marital property.

However, the marital property will only be distributed in a 66% to 33% (i.e., 2 to 1) ratio if the amount of Mrs. Mosley's contributions to the District of Columbia residential property since 1980 are zero, or close to zero.[4] Furthermore, if the contributions are high enough, Mr. Mosley may receive none of the marital property or may even become indebted to Mrs. Mosley, which would be inconsistent with the trial judge's conclusions on the 2 to 1 split between the parties and that the distribution of retirement benefits will leave Mr. Mosley with enough future income to maintain a "fairly comfortable standard of living." According to Mr. Mosley's brief, Mrs. Mosley has submitted a statement of her payments toward maintaining the District of Columbia property amounting to $21,-965.51, which, if granted, would make the distribution 77% to 23% in favor of Mrs. Mosley.[5] This would be inconsistent with the trial judge's conclusion that Mr. Mosley will receive approximately 33%, and Mrs. Mosley will receive approximately 66%, of the marital property, exclusive of retirement benefits.

Accordingly, we reverse and remand the case to the trial court to determine the monetary value of the reimbursements due to Mrs. Mosley, and thereafter to determine the appropriate division of the marital property between the parties pursuant to D.C.Code § 16–910.

---

4. The marital property, excluding the retirement benefits and specific personal property distributed to Mrs. Mosley, amounts to $209,660. Aside from the retirement benefits and requirement that Mr. Mosley reimburse Mrs. Mosley for her payments in maintaining the D.C. property, Mr. Mosley would receive $70,629 (about 33% of $209,660) and Mrs. Mosley would receive $139,031 (about 66% of $209,660).

5. If $21,965.51 is redistributed from Mr. Mosley's share of the marital property to Mrs. Mosley's share, Mr. Mosley's share, exclusive of retirement benefits, would amount to $48,663.49 (23% of $209,660) and Mrs. Mosley's share, exclusive of retirement benefits, would amount to $160,996.51 (77% of $209,660).